**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 24-56234-lrc |
| **JASON LEE DAGLEY,** | : | CHAPTER 7 |
| Debtor. | : | JUDGE (Lisa Ritchey Craig) |
| ------------------------------------------------------- | : | |
| CAMDEN DEVELOPMENT, INC, a/a/f | : | |
| CAMDEN DEERFIELD APARTMENTS, | : | |
| Movant, | : | |
| v. | : | **CONTESTED MATTER** |
| JASON LEE DAGLEY, Debtor, | : | |
| KYLE A. COOPER, Chapter 13 Trustee, | : | |
| Respondent. | : | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Camden Development, Inc., a/a/f Camden Deerfield

Apartments, has filed a ***Motion for Relief from Automatic Stay*** (**the "Motion"**) and related

papers with the Court seeking an order **granting relief from the automatic stay.**

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **Motion**

at **10:00 A.M.** on **August 1, 2024** in Courtroom **1204**, United States Courthouse, 75 Ted Turner

Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual

Hearing Room.  You may join the Virtual Hearing Room through the "Dial-in and Virtual

Bankruptcy Hearing Information" link at the top of the homepage of the Court's website,

www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the

Court's website. Please also review the "Hearing Information" tab on the judge's webpage for

further information about the hearing.  You should be prepared to appear at the hearing via

video, but you may leave your camera in the off position until the Court instructs otherwise.

1

Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: July 10, 2024

/s/ J. Mike Williams
J. Mike Williams
Counsel for Movant
Georgia Bar No. 765209
Fowler, Hein, Cheatwood & Williams, P.A.
2970 Clairmont Road
Suite 220
Atlanta, GA  30329
404-633-5114 Telephone
404-325-9721 Facsimile
mwilliams@apartmentlaw.com

2

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 24-56234-lrc |
| | : | |
| **JASON LEE DAGLEY,** | : | CHAPTER 7 |
| | : | |
| Debtor. | : | JUDGE (Lisa Ritchey Craig) |
| ------------------------------------------------------------- | : | |
| CAMDEN DEVELOPMENT, INC, a/a/f | : | |
| CAMDEN DEERFIELD APARTMENTS, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | **CONTESTED MATTER** |
| | : | |
| JASON LEE DAGLEY, Debtor, | : | |
| KYLE A. COOPER, Chapter 13 Trustee, | : | |
| | : | |
| Respondent. | : | |

### <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

**COMES NOW** Camden Development, Inc., a/a/f Camden Deerfield Apartments, by

and through counsel, and hereby moves the Court as follows:

1.

This Court has jurisdiction over this contested matter pursuant to 28 USC 1471 and 11

USC 362 and 363.

2.

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on June 14, 2024.

3.

Movant is the  lessor of the premises where the Debtor resides at 7201 Deer Creek

Place, Alpharetta, GA 30004 (the "Premises").

4.

Debtor leased said property from Movant under a written lease agreement at a monthly rental rate of $2,429.00 with a late fee of $242.90 plus utilities.  Attached hereto as Exhibit No. 1 is a true and accurate copy of the Lease.

5.

Debtor owes pre-petition rent and fees for the months of May and June, 2024 in the amount of $9,432.26 and post-petition rent for the month of July, 2024 in the amount of $2,853.40, including utilities.  Attached hereto and marked as Exhibit No. 2 is a true and accurate copy of the Ledger.

6.

Debtor's lease commenced on July 25, 2023.

7.

Pursuant to 11 USC 362, Movant is stayed from the commencement or continuation of any court or other proceeding against Debtor to recover the leased premises.

8.

Debtor has a mere possessory interest in the property.

9.

By reason of the foregoing, continuation of the automatic stay of 11 USC 362(a) will work real and irreparable harm to Movant.

10.

Debtor is still in possession of the premises, and Movant is not adequately protected. Therefore, Debtor is required to return possession to the lessor.

4

**WHEREFORE,** Petitioner prays for:

1.  An Order terminating the automatic stay and authorizing Movant to commence and/or continue with eviction proceedings in State Court;

2.  A waiver of Bankruptcy Rule 4001(a)(3);

3.  Reasonable attorney's fees; and/or

4.  Such other and further relief as is just and proper.


This the 10th day of July, 2024.


/s/ J. Mike Williams
J. Mike Williams
State Bar No. 765209
Attorney for Movant

Fowler, Hein, Cheatwood & Williams, P.A.
2970 Clairmont Road
Suite 220
Atlanta, GA  30329
404-633-5114 Telephone
404-325-9721 Facsimile
mwilliams@apartmentlaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 24-56234-lrc |
| | : | |
| **JASON LEE DAGLEY,** | : | CHAPTER 7 |
| | : | |
| Debtor. | : | JUDGE (Lisa Ritchey Craig) |
| ----------------------------------------------------------- | : | |
| CAMDEN DEVELOPMENT, INC, a/a/f | : | |
| CAMDEN DEERFIELD APARTMENTS, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | **CONTESTED MATTER** |
| | : | |
| JASON LEE DAGLEY, Debtor, | : | |
| KYLE A. COOPER, Chapter 13 Trustee, | : | |
| | : | |
| Respondent. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing

**Motion for Relief from Stay and Notice of Hearing** with the Clerk of Court using the CM/ECF

system which will automatically send an e-mail notification of such filing to the parties or

attorneys of record. I have also on this day caused a copy of the pleading to be placed in the first-

class United States mail, postage prepaid, addressed to the recipients not participating in the

CM/ECF system.  All parties served are as follows:

**Via U.S. Mail:**

Jason Lee Dagley
7201 Deer Creek Place
Alpharetta, GA  30004

6

**Via CM/ECF Electronic Service**:

Kyle A. Cooper
Kyle A. Cooper Trustee
120 Travertine Trail
Alpharetta, GA  30022

U.S. Trustee
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, S.W.
Atlanta, GA  30303

Danielle J. Eliot
Law Office of Danielle J. Eliot, PC
Suite 151
2470 Windy Hill Road, S.E.
Marietta, GA  30067

Dated: July 10, 2024

/s/ J. Mike Williams
J. Mike Williams
Georgia Bar No. 765209
Counsel for Movant
Fowler, Hein, Cheatwood & Williams, P.A.
2970 Clairmont Road
Suite 220
Atlanta, GA  30329
404-633-5114 Telephone
404-325-9721 Facsimile
mwilliams@apartmentlaw.com



EXHIBIT
1

| LEASE AGREEMENT FOR Camden Deerfield COMMUNITY | | |
|---|---|---|
| Unit Address (the "Unit")<br>7201 Deer Creek Place<br>Alpharetta,GA  30004<br>Community address:<br>13200 Summit Blvd<br>Alpharetta, GA<br>30004-4905 | Mailbox Number<br>115 | Contract Date<br>07/25/2023 |
| Total Monthly Rent<br>$ 2594.00 | Prorated Rent<br>$ 1729.33 | Prepared By: Admin  Admin |

Utilities and Other Services included in the Total Monthly Rent: The following items are included in the Total Monthly Rent identified above, if checked:

☐ water ☐ electricity ☐ wastewater ☐ gas ☐ trash ☑ front door trash pickup ☐ homeowners/business association fees ☐ pest control ☑ Technology Package (which may include cable TV, internet and Wi-Fi)

Resident agrees to pay for all items not checked above to the extent allowed by applicable law and as provided in this Lease or any other document signed by Resident.

Additional Items: The following items are included in the Total Monthly Rent identified above:

(if any rentable item is separately identified and subject to sales tax, Resident shall pay sales tax in addition to the charge for the item)

Special Provisions: Additional addenda attached.

| LEASE TERM | | | | |
|---|---|---|---|---|
| Type<br>Renewal | Length<br>15 | Start Date<br>09/11/2023 | End Date<br>12/15/2024 | 7/31/2023 |

| POTENTIAL CHARGES | | | | | |
|---|---|---|---|---|---|
| NSF | $25.00 | Termination Charge | $2594.00 | Late Payments | Rent is late on day 4. The late fee is 10.00% + 0.00 per day |
| Access Gate/Remote | $35.00 | Cancellation Payment | $2594.00 | Transfer Fee | 50% of Total Monthly Rent |

| MONTHLY PAYMENT | |
|---|---|
| Rent | 2429.00 |
| Valet Waste | 36.00 |
| Parking Monthly Rent Charge | 15.00 |
| Technology Package | 114.00 |
| TOTAL MONTHLY PAYMENT | $2594.00 |

| DEPOSITS | |
|---|---|
| Security Deposit | 0.00 |
| Animal Deposit | $ |
| TOTAL DEPOSITS | |

| ONE-TIME FEES | |
|---|---|
| Application Fee(s) | $0.00 |
| Administrative Fee | $0.00 |
| Community Fee | $150.00 |
| Non-Refundable Animal Fee(s) | $0 |
| Clean Fee | $175 1 Bedroom/$200 2 Bedroom/$250 3 Bedroom/$300 3 Bedroom Townhome |

RESIDENT NAME(S):
Jason Dagley, David Dagley

OCCUPANT(S):
Jason Dagley, Isabella Dagley, Georgianna Dagley

Owner's Agent Initials _____

**Unless otherwise indicated, capitalized terms used in this document shall refer to those terms identified above.**

Owner's Agent Initials_____

Resident's Initials_____

© Camden, 2005    Revised January 2021

This Lease Agreement (this "Lease", which term shall include this document, the State Addendum attached to this document and all other applicable addenda referred to in this document or executed by the Resident identified herein) is made and entered into on 07/25/2023, by and between Camden Deerfield (the "Owner"), the owner of the Camden Deerfield apartment community (the "Community") by and through Camden Development, Inc., as Owner's managing agent only and not as principal, and the Residents identified on page 1 ("Resident", whether one or more) upon the terms and conditions stated herein. If there is more than one Resident, all persons identified on page 1 as Residents are jointly and severally liable for all payments and other obligations under this Lease. This document and the State Addendum should be read carefully. For and in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the parties agree as follows:

1.       ***Delivery of Unit.***

a.       <u>Resident's Obligations when Lease is signed.</u> Once Resident signs this Lease, Resident shall be obligated to comply with this Lease. Provided, however, Resident shall have the right to cancel this Lease prior to the Start Date in the event Resident: (i) provides written notice to Owner prior to the date on which Resident desires to cancel this Lease; (ii) pays a cancellation fee in the amount of $_50_ per day for each day after the date on which Resident has signed the Lease (as long as the cancellation date is prior to the Start Date; if not, Resident has no right to cancel this Lease pursuant to this provision) up to a maximum of the greater of: (a) 30 days of the per diem fee; or (b) an amount equal to the Monthly Rent; and (iii) signs a Cancellation of Lease Agreement on Owner's form and submit the Cancellation Agreement to Owner which will formally cancel this Lease.  Resident acknowledges that: (i) the cancellation fee is a buy-out fee which contemplates the various risk of the parties with respect to early termination of this Lease; (ii) Resident's right to cancel under this provision may be exercised by Resident, in Resident's sole discretion; and (iii) if Resident fails to cancel this Lease prior to the Start Date, Resident is responsible for complying with all terms of this Lease.

b.       <u>Owner's Delay in Occupancy.</u>  Resident acknowledges that Owner's ability to provide the Unit in a timely fashion will depend upon the availability of the Unit and that, even though the previous resident residing in the Unit may be scheduled to move out, such resident may not move out in a timely fashion. If actual commencement of occupancy of the Unit is delayed, either by construction, repair, make ready, or holdover by a prior resident, Owner shall not be liable for damages by reason of such delay, but the Rent will be abated per diem, and pro-rata, during the period of delay. Such delay will not affect any of the other terms of this Lease.

c.       <u>Resident's Delay in Move-In.</u>  If Resident doesn't move in as of the Start Date identified on page 1 of this Lease (unless Owner has provided Resident notice that the Unit is not ready for move-in), Resident shall be deemed in default of this Lease.  Owner will then be entitled to pursue all remedies as a result of Resident's default. Alternatively, and subject to applicable law, Owner may, but shall not be obligated to, terminate Resident's right to move-in pursuant to this Lease and assess liquidated damages in the amount of one month's rent. Resident acknowledges that this liquidated damage is a reasonable amount considering the uncertain damages Owner may have as result of Resident failure to move-in and that actual damages would be uncertain and difficult to calculate.

d.       <u>Move-In Procedures.</u>  All moving vans, trucks or other activity relating to moving into or out of the Community must begin no earlier than 8:00 a.m. and end no later than 9:00 p.m. Resident shall be responsible to Owner for any damages to the Unit or the Community caused by Resident, other occupants or their respective guests or invitees (including movers), whether caused during move-in, during the term of this Lease or during move-out.

e.       <u>Move-In Condition.</u>  An Inventory and Condition Form will be provided to Resident at the time that Resident moves into the Unit. Unless otherwise provided by applicable law, Resident accepts the Unit "as is" and in habitable condition suitable for residential purposes and acknowledges that the floor plan and dimensions of the Unit may vary from other units of the same type in the Community, including any different unit that Resident may have toured prior to signing the Lease.  Resident agrees that unless otherwise prohibited by applicable law, in the event Resident does not notify Owner within 48 hours after Resident begins occupancy of the Unit of any problems with the Unit or furniture, furnishings, equipment or appliances, if any, the Unit and all furniture, furnishings, equipment or appliances, if any, contained in the Unit will be deemed to be acceptable and in good condition. <u>TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW AND SUBJECT TO THE PROVISIONS OF THIS LEASE, OWNER EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED RELATING TO THE UNIT OR ANY FURNITURE, FURNISHINGS, EQUIPMENT OR APPLIANCES, IF ANY, IN THE UNIT INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, HABITABILITY OR SUITABILITY.</u>

f.       <u>Elevators.</u>   Resident acknowledges that, if the Community has elevators, such elevators are mechanical devices that can malfunction or be rendered inoperative at any time and that the Owner is not responsible for the failure of elevator service should the elevator cease to function. To the extent allowed by

Owner's Agent Initials_____

Resident's Initials_____

Page 2 of 20





7/31/2023       8/1/2023

© Camden, 2005   Revised January 2021

law, Resident shall not be entitled to any diminution in value due to elevator malfunction or the elevator's failure to operate.

2. **_Term._** Subject to the provisions of this Lease, the initial term of this Lease shall commence on the Start Date and end on the End Date. Provided, however, unless prohibited by applicable law, a 60 day written notice is required by either party to terminate this Lease at its stated End Date. To the extent allowed by applicable law, if notice of termination is not given at least 60 days prior to the stated End Date, this Lease will automatically renew on a month-to-month basis until either party gives at least 30 days prior written notice to the other; in which case, this Lease shall terminate 30 days from the date indicated in the notice or such later date designated in the notice (whether or not the 30th day falls at the end of the month; if the termination date is not at the end of the month, Monthly Rent shall be prorated accordingly).

3. **_Rent and Charges._**

   a. <u>Rent and Other Charges.</u>

      i. <u>Initial Charges:</u> Unless otherwise instructed in writing by Owner, upon the execution of this Lease, Resident shall pay, in the amount identified on page 1 of this Lease, the Community Fee, and prorated rent covering the period through the first date that the Monthly Rent is to be paid.

      ii. <u>Monthly Charges:</u> Beginning with the first day of the next calendar month after the period covered by the Prorated Rent and continuing throughout the term of this Lease, Resident shall pay the Monthly Rent identified on page 1 each month in advance and without any demand, deduction or offset whatsoever on or before the first day of each month with no grace period. In addition to the Monthly Rent, to the extent allowed by applicable law, resident shall pay the fees identified in the State Addendum to this Lease. All monthly charges shall be paid as follows (check as applicable):

         ☑ online through the Owner's portal at www.mycamden.com.
         ☐ mailed to Owner at .
         ☑ delivered to Owner at the on-site manager's office.

      Resident acknowledges that the Monthly Rent does not include any separately billed fees.

      iii. <u>Applicable to all payments:</u> Resident shall not pay Rent or any other charges with cash. To the extent allowed by law, Owner shall have the right at any time with notice to Resident to change the method of payment accepted by Owner. Unless otherwise approved by Owner in writing, partial payment of Rent is not acceptable at any time. All payments must be made in full to include all amounts due. Post-dated or third-party checks will not be accepted. Payments made to the office will not be held at the request of anyone. All payments made to the office will be directly deposited. Unless otherwise provided by applicable law, Resident's obligation to pay Rent and other charges is an independent covenant and not conditional upon the performance by Owner of Owner's responsibilities under this Lease. Resident shall not be released from obligations under this Lease as a result of notations on checks. Owner's acceptance of checks with restrictive notations shall not, in any way, constitute a waiver by Owner of any right to require Resident's full compliance with this Lease. If multiple checks are tendered and one check is returned non-sufficient funds or if for any reason, the total amount due is not paid, Resident shall be in default of this Lease and Owner shall be entitled to pursue any remedies.

   b. <u>Late Payments and Insufficient Funds.</u> If Resident does not pay all Rent in accordance with the Lease, Resident shall pay a late fee in accordance with the attached State Addendum. Unless Owner provides otherwise in writing, in the event Resident tenders two or more forms of payment (i.e. check or ACH payments) returned for insufficient funds, Resident shall not be allowed to make future rent payments online and shall be required to: (i) pay all rent for the remainder of the Lease term by money order (which shall be a paper money order or, if available, an electronic money order), cashier's check or certified funds; or (ii) enroll in a direct deposit program established by Owner. To the extent allowed by law, the acceptance by Owner of any payments made after a notice to vacate or similar notice to begin the eviction process shall not waive Owner's right to continue with the eviction process. Resident shall pay a charge in the amount permitted by applicable law for each returned form of payment (i.e. check or ACH payment) plus applicable initial and daily late charges until Owner receives acceptable payment.

   c. <u>Application of Payments; Acceptance of Late Payments.</u> To the extent allowed by applicable law, all payments due under this Lease (including late fees, NSF fees, attorneys' fees, damages, eviction fees, utility fees and other fees and charges) will be considered as additional rent (such additional rent, together with the Monthly Rent and Prorated Rent shall sometimes be collectively referred to as "Rent") and Owner shall be

Owner's Agent Initials_____

Resident's Initials_____


7/31/2023


8/1/2023

© Camden, 2005    Revised January 2021

entitled to pursue any remedies associated with Resident's failure to pay Monthly Rent. Resident agrees that unless otherwise required by applicable law, all payments made will be applied first to fees and charges other than Monthly Rent (late fees, NSF fees, attorneys' fees, damages, eviction fees, utility fees and other fees and charges), then to past due Monthly Rent and then to current Monthly Rent. Additionally, notwithstanding anything contained in this section relating to the acceptance of late fees, NSF charges or any other delinquent payments, in the event that Resident fails to pay Monthly Rent on or before the first day of any month, Resident shall be deemed in default of this Lease.  Owner shall then be entitled to pursue any rights or remedies against Resident pursuant to this Lease or applicable law.

4.    ***Rent Increases and Lease Changes.*** Owner shall have the right to modify any of the terms of this Lease including the amount of Rent or other charges due and payable by Resident, to be effective at the expiration of the Lease term by providing Resident with at least 65 days' notice of such modification or, to be effective as of the expiration of any month-to-month renewal period by providing Resident with at least 35 days' notice of such modification. Resident shall be obligated to comply with the Lease modification from and after the date when the Lease term or renewal period ends as if such modification were incorporated directly into this Lease, as signed by Resident. Resident acknowledges that such lease modification may include, but is not necessarily limited to, increasing the rent by assessing a month-to-month fee to be paid by Resident in addition to Resident's Monthly Rent amount.

5.    ***Security Deposit.***

      a.    Security Deposit. Resident agrees to deposit the amount identified on page 1 with Owner as security for the performance of this Lease by Resident. Should charges be made against the Security Deposit during the term of this Lease because of breakage or other damages to the Unit or to furniture, furnishings, equipment or appliances, if any, in the Unit, Resident agrees, after notice, to deposit such additional amount as may be required to restore the Security Deposit to the original amount. Resident shall have no right to use the Security Deposit as the last month's rent. When the Unit is vacated and Resident has turned in all keys given to Resident with respect to Resident's occupancy of the Unit and residency in the Community and after inspection by Owner, the Security Deposit shall be refunded to Resident, less any reasonable charges for cleaning and damages to the Unit (beyond normal wear and tear) and after deduction of any other monies owed (including Rent, late charges, fees associated with lost gate openers and keys, etc.). PROVIDED, HOWEVER, AS A CONDITION FOR REFUNDING THE SECURITY DEPOSIT, RESIDENT MUST GIVE WRITTEN NOTICE TO OWNER ON OWNER'S FORM AT LEAST SIXTY (60) DAYS PRIOR TO MOVING FROM THE UNIT AND FULFILL ALL OTHER PROVISIONS OF THIS LEASE INCLUDING THE COVENANT TO OCCUPY THE UNIT AND PAY RENT FOR THE FULL TERM OF THIS LEASE.   For the purposes of this section, to the extent allowed by applicable law, the parties agree that the condition of the Unit will be considered beyond normal wear and tear if any portion of the Unit (including walls, floors or ceilings) or any of the Owner's property in the Unit (including furniture, fixtures, carpeting, appliances, etc.) are: (i) damaged; (ii) in a condition that shortens the expected useful life of the affected area or item; (iii) in need of repair or replacement; or (iv) in need of a substantial amount of cleaning in order to be used by the next resident of the Unit.

      b.    Additional Security Deposit. The Security Deposit amount listed on page 1 does not include an additional deposit for animals. In the event that Resident desires to have an animal in the Unit and animals are allowed on Owner's Community, Resident shall sign a separate animal agreement and pay the appropriate additional security deposit. In the event that a deposit is paid, such deposit shall be added to the Security Deposit, if any, previously paid by Resident for all purposes under this Lease.

6.    ***Cancellation Option.*** As long as Resident is not in default of this Lease either at the time Resident desires to cancel this Lease or when this Lease will be terminated, Resident shall have the option of canceling this Lease by complying with all of the following procedures:

      a.    At least 60 days prior to the date Resident desires to terminate this Lease, Resident shall: (i) execute a Cancellation of Lease Agreement (the "Cancellation Agreement") on Owner's form and submit the Cancellation Agreement to Owner identifying a date of proposed termination (which shall be no less than 60 days prior to the execution of the Cancellation Agreement); and (ii) deliver to Owner a payment, by cashier's check or money order  or any other method the Owner authorizes on the Community's resident portal or MyCamden.com), which shall be the sum of: (A) Rent due under this Lease through the Termination Date; (B) a cancellation fee equal to the Total Monthly Rent identified on page 1 of this Lease; and (C) repayment of concession fees or rental concessions, if any (free or reduced Rent provided at the commencement of or during this Lease) unless Resident has occupied 7201 Deer Creek Place  for the full initial term of this Lease (items (B) and (C) above shall be collectively referred to as the "Cancellation Payment"); and

      b.    Resident shall vacate the Unit on or before the Termination Date.

Resident acknowledges that: (i) the Cancellation Payment is a buy-out fee which contemplates the various risks of the parties with respect to the early termination of this Lease; (ii) this cancellation option may be exercised by Resident, in Resident's sole discretion; and (iii) if Resident vacates the Unit prior to the expiration

Owner's Agent Initials_____

Resident's Initials_____


7/31/2023


8/1/2023

© Camden, 2005   Revised January 2021

of this Lease without complying with all requirements to exercise Resident's cancellation option, Owner shall have the right to declare Resident in default of the Lease and be entitled to collect from Resident all appropriate damages as authorized by this Lease and applicable law. Notwithstanding the foregoing, in the event that Resident is in default of this Lease after Resident has executed the Cancellation Agreement, Owner shall have the right, but not the obligation, to declare the Cancellation Agreement null and void and retain the Cancellation Payment as an additional Security Deposit, subject to the terms of this Lease and applicable law.

7.      ***Military Release.*** Except under this provision or paragraph 6 above, or unless required by applicable law, Resident will not be released from this Lease on grounds of voluntary or involuntary business transfer, marriage, divorce, separation, loss of co-residents, or any other reason. If Resident enters military service during the term of this Lease or Resident, while in military service, executes this Lease and thereafter receives military orders for a permanent change of station or to deploy with a military unit for a period of not less than 90 days, Resident shall be entitled to terminate this Lease in accordance with the Servicemembers Civil Relief Act (the "SCRA"). A qualifying resident under the SCRA must furnish Owner with proof to establish that Resident qualifies for this limited exception.  Proof may consist of any official military orders, or any notification, certification, or verification from the servicemember's commanding officer, with respect to the servicemember's current or future military duty status. Military permission for base housing does not constitute a permanent change-of-station order.   Oral notice is not sufficient. Any termination under this provision shall become effective 30 days after the first date on which the next rental payment is due subsequent to the date when the notice of termination is delivered. A co-resident that is not a dependent pursuant to the SCRA (which includes the servicemember's spouse) cannot terminate this Lease under this provision. Resident shall be responsible for Rent and all charges (including damages to the Unit) through the effective termination date.

8.      ***Move-Out Procedure and Rules.***

        a.      Notice and Cleaning Fee. Prior to moving out, except for moving out after Resident's default or after Owner provides Resident with notice of termination, Resident must give Owner proper notice of termination in accordance with paragraph 2 of this Lease. Resident agrees that the Cleaning Fee identified on page 1 of this Lease shall be owed as additional rent as of the date Resident signs this Lease, shall be paid by Resident at any time on or before the earlier of: (i) the date on which Resident gives Owner Resident's notice of termination; (ii) within 5 days after the date on which Owner gives Resident a notice of termination; (iii) the date on which Resident moves out of the Unit; or (iv) within 5 days after the date on which Resident is asked to move out by Owner due to Resident's default of this Lease. Resident acknowledges that the Cleaning Fee is: (i) intended to assist Owner in covering the cost and expenses associated with making the Unit ready for the next resident; (ii) non-refundable; (iii) a separate charge due and owing under this Lease and is not intended to secure performance under this Lease; (iv) an amount that would be included in the Monthly Rent if it was not separately assessed and paid; (v) in partial consideration for Owner agreeing to enter into this Lease; and (vi) a charge for which the Resident is legally liable under this Lease. Owner shall have the right, but not the obligation, to declare Resident to be in default of this Lease or apply all future payments made by Resident (including the Monthly Rent payment) to the unpaid Cleaning Fee, thereby leaving a delinquency in the other payments (including the Monthly Rent).

        b.      Condition of Unit upon move out.  At the expiration of this Lease or renewal period, Resident and all Occupants shall: (i) vacate the Unit; and (ii) leave the Unit in a good and rentable condition, normal wear and tear excepted; Resident shall remain responsible for removing all personal items including, but not limited to, furniture, clothing, trash and food items.  Any personal items left in or about the Unit may subject Resident to additional costs to dispose of such items. Resident shall be responsible to Owner for any damage to the Unit caused by Resident, other occupants or their respective guests or invitees (including movers), including costs associated with deodorizing the Unit necessitated by excessive odor due to smoking, cooking or other causes. If Resident displaces a new resident who was scheduled to move into the Unit by not moving out on or before Resident's scheduled move-out date, Resident will be responsible for alternate housing and other costs of the displaced resident.

        c.      Holdover. At the expiration of this Lease, Resident shall: (i) return all keys, gate openers and remotes to the office or Rent will continue to be charged; and (ii) pay any outstanding charges or delinquent Rent. In the event that Resident fails to deliver all keys or in the event that Resident, Occupants, guests or invitees fail to fully vacate the Unit on or before Resident's termination date, in addition to any other rights or remedies Owner may have under this Lease or applicable law, Resident may, at Owner's option, be charged holdover rent and other charges to the fullest extent allowed by applicable law.

        d.      Abandonment. If Resident and all Occupants are absent from the Unit for five (5) consecutive days, during the term of this Lease or any renewal or extension period, while all or any portion of the Rent is delinquent, the Unit (and any garage or storage space leased by Resident) shall be deemed abandoned. Additionally, to the extent allowed by applicable law, the Unit shall be deemed abandoned 5 days after the death of Resident, if Resident lives alone in the Unit, whether or not all or any portion of the Rent is delinquent. Personal property of the Resident in the Unit (or in any garage or storage space leased by Resident) deemed abandoned shall be considered abandoned personal property. In the event Resident abandons the Unit or

Owner's Agent Initials_____

Resident's Initials_____

*JD*
7/31/2023


8/1/2023

© Camden, 2005   Revised January 2021

leaves the Unit after receiving a notice to vacate or being judicially evicted, Owner shall be entitled to dispose or sell, at Owner's discretion, any personal property remaining in the Unit (or in any garage or storage space leased by Resident) in any manner not in conflict with applicable law.

9.   **_Transferring to Another Unit._** In order to qualify to transfer to another unit in the Community or to another Camden community, Resident must: (i) be in compliance with this Lease; (ii) no later than 60 days prior to the date on which Resident desires to transfer, sign a Transfer Request Agreement; and (iii) have occupied the Unit at least 90 days prior to the transfer date. Owner reserves the right to require Resident to pay a new application fee, a new animal fee, a new animal or security deposit, administrative fee and otherwise re-qualify. If Resident's current Lease term is not fulfilled, prior to the transfer date, Resident shall: (i) pay a transfer fee in the amount of 50% of the total monthly rent identified on page 1; and (ii) repay all financial concessions/specials received by Resident, if allowed by applicable law. Resident's new lease will begin on the day Resident transfers to Resident's new unit. No transfer shall be permitted unless a replacement unit is available. If Resident owes Rent or other charges with regard to the Unit, such Rent and other charges shall be deemed additional Rent immediately due from and payable by Resident to Owner under Resident's new Lease Agreement. Any payments received by Owner following the transfer date shall be first applied to amounts Resident owes with regard to the Unit and then to obligations Resident owes with regard to Resident's new unit. In the event Resident transfers, to the extent allowed by applicable law, Resident's relocation to the new unit shall constitute a release of any claims Resident had or may have had as of the transfer date against Owner, Camden Development, Inc. as well as their respective owners, affiliates, shareholders, partners, officers, directors, agents, employees, successors and assigns related to, arising out of or in any way connected to this Lease, the Unit, the previous acts or omissions of Owner or Owner's managing agent or contractors or the use and occupancy of the Unit or common areas of the Community by Resident occupants or guests.

10.  **_Occupants._** The Unit may be occupied by Resident and the Occupants specified on page 1 only. No other persons shall be authorized to occupy the Unit for a period exceeding 3 consecutive days and no more than 6 days in any one 30-day period without the prior written authorization of the Owner.

11.  **_Assignment and Subletting._**

a.   <u>Prohibited without written consent.</u> Resident shall not assign, sublet, license or in any way convey, or offer or advertise the assignment, sublet, license or other conveyance of, all or any portion of this Lease, the Unit or Resident's right to occupy the Unit to anyone without the Owner's prior written consent. This includes, but is not limited to: (i) assigning, subletting, licensing or in any way conveying, or advertising for assignment, sublet, license or other conveyance of the Unit, or any portion of the Unit, on a short term basis (for a period of less than 30 days) or on a long term basis (for a period of 30 or more days); or (ii) advertising the Unit, or a portion thereof, for assignment, sublet, license or other conveyance on any forum whatsoever including, but not limited to, word of mouth, print, electronic mail or the internet (including any social media or locator sites such as Airbnb, Craig's List, Expedia, Hotels.com or any other similar sites), regardless of whether the purpose of such advertisement is for short term or long term rental or to transient occupants. Resident agrees that the prohibition against assignment, subletting, licensing or any other conveyance includes a prohibition against Resident from accepting, or offering to accept, any type of compensation or consideration in exchange for providing a person occupancy. In the event Resident violates this provision, the Owner shall be entitled to pursue any rights or remedies under this Lease or applicable law including, but not limited to, terminating Resident's right to possession of the Unit and seek recovery of all damages due under the Lease and any other damages the Owner may sustain as a result of Resident's conduct (including, but not limited to, any fines or fees assessed against the Owner by any federal, state or local authority, loss in business revenue or any other damages). Resident hereby agrees to indemnify and hold the Owner and related parties harmless from all fines, fees or losses.

b.   <u>Requesting written consent.</u>  In order to request assignment or subletting, Resident must submit such request in writing on Owner's form and no assignment or subletting will be approved unless: (i) the new resident and a guarantor, if applicable, sign and submit the appropriate application documents; (ii) the new resident and the guarantor, if applicable, are approved by Owner; and (iii) the Owner and the remaining resident, the new resident, the departing resident and any guarantor, if applicable, sign the appropriate Amendment to Lease Agreement and guaranty document (if applicable). Unless the Owner agrees otherwise in writing, the Security Deposit will automatically transfer to secure the performance of the replacement and remaining residents under the Lease governing their occupancy of the Unit. The departing resident will no longer have a right to occupy the Unit or to receive a Security Deposit refund but will remain liable for the remainder of the original Lease term unless the Owner has agreed otherwise in writing, even if a new Lease is signed.

12.  **_Utilities and Services._**

a.   <u>Generally.</u>  Resident shall pay, in accordance with a monthly bill to Resident, certain fees, assessments and charges relating to utilities or other services not identified on page 1 as being included in the Monthly Rent. Resident acknowledges that the monthly bill for such fees, assessments and charges will include various

Owner's Agent Initials_____

Resident's Initials_____





© Camden, 2005   Revised January 2021

items agreed to be paid by Resident pursuant to this Lease and the State Addendum including, but not necessarily limited to, water and sewer service, trash service, recycling service, gas and electricity service and stormwater, drainage and other governmental or quasi-governmental fees and assessments assessed against the Community.  Additionally, Resident agrees to pay a monthly service fee or administrative billing fee, if identified in the State Addendum. Resident shall not allow any utilities to be disconnected until the earlier of the termination of Resident's right to possession or the expiration of the term of this Lease (including any month-to-month renewal). Resident shall promptly advise Owner if Resident receives notice from any applicable authority that any of the utilities are to be disconnected.  All utilities and services shall be used for ordinary household purposes only.

b.      <u>Electricity and Gas.</u>  To the fullest extent allowed by applicable law, in the event that Resident is required to pay for electricity or gas service and the electricity or gas service is either not placed in Resident's name or has been switched from Resident's name, Resident shall pay to Owner all electricity and gas service which should have been paid for by Resident, Resident shall pay a fee identified on the attached State Addendum. Resident acknowledges that, notwithstanding Resident's payment to Owner for utility service not connected in Resident's name or payment of the fee, Resident's failure to place electricity or gas service in Resident's name or allow electricity or gas service to be switched from Resident's name, constitutes a default by Resident of this Lease and will entitle Owner to all remedies. Resident agrees that Owner's acceptance of payment for electricity or gas service or the fee shall not waive or relinquish any rights or remedies Owner has to declare a default of this Lease as a result of Resident's violation of this provision including, to the extent allowed by applicable law, terminating Resident's right to possession of the Unit. To the extent allowed by law, Resident hereby agrees that Owner may select the electricity service provider for the Community including the Unit. Accordingly, Resident acknowledges that electricity to the Unit will be connected in Resident's name with an electricity provider chosen by Owner, unless Resident gives Owner written notice of Resident's intent to switch providers.  In the event Resident chooses to switch providers, Resident shall: (1) provide advance written notice to Owner; and (2) pay all switching fees including, to the extent allowed by law, fees to switch back to Owner's provider when Resident vacates the Unit.  Resident agrees to execute such documents as may be necessary to authorize Owner to select the electricity service provider for the Community including the Unit, upon request, but not later than 10 days after such request is made.

c.      <u>Technology Package.</u>  Resident acknowledges that the Technology Package includes a number of amenities designed to enhance Resident's living experience in the Community. The Technology Package may, but is not required to, include digital adapters, cable TV, internet, WiFi and electronic access devices. If the Technology Package box is checked on page 1 of this Lease, the Technology Package amenities offered by the Community are included in the Monthly Rent. If the Technology Package box is not checked on page 1 of this Lease, and the Community offers one or more of the Technology Package services, Resident shall be allowed to use such amenities in accordance with a separate addendum for the applicable fee.

    i.      <u>Activation Charge.</u>  Whether the Technology Package is offered as part of the Monthly Rent or for a separate fee, Resident agrees to pay an activation charge not to exceed $50. This activation charge will be a one-time fee due upon move in to cover the Owner's administrative costs with respect to having third party communication providers deliver technology-related services in the Unit and the Community.

    ii.     <u>Adding, Subtracting or Modifying the Technology Package.</u>  In the event Technology Package amenities are not included in the Monthly Rent, Owner shall have the right during the term of this Lease to add such amenities as part of Resident's Monthly Rent by providing Resident with at least 30 days written notice and requiring that Resident pay an additional fee as part of the Monthly Rent.   In the event Owner requires Resident to pay an additional fee for the Technology Package amenities, the Monthly Rent shall be increased by the amount indicated in Owner's notice. In the event that Owner's costs of providing the Technology Package amenities (including costs directly paid to communications providers or any indirect costs of the Owner associated with administering the amenities) to Resident increase, Owner shall have the right to increase the Monthly Rent by the amount of such increased costs (not to exceed $5.00 per month) by providing Resident with at least 30 days' prior written notice. In the event of such notice, the increased Monthly Rent will commence on the first day of the month after the expiration of 30 days from the date of Owner's notice. In the event that any Technology Package amenity is provided as part of the Monthly Rent identified on page 1 of this Lease, Resident acknowledges that to the extent allowed by applicable law, the Owner may discontinue or modify such amenity by providing Resident at least 30 days prior written notice of such discontinuation or modification in service. In the event Owner provides such notice to Resident, Resident acknowledges that Resident's ability to receive the applicable amenity after the date on which the Owner discontinues or modifies the service will be at Resident's sole option and expense by contacting the applicable service provider.

    iii.    <u>Smart Technology.</u>

Owner's Agent Initials_____

Resident's Initials_____

Page 7 of 20





© Camden, 2005    Revised January 2021

During the term of this Lease the Owner may, but is not obligated to, engage service providers to provide certain smart services (collectively referred to as the "Services") in the Unit and the Community. The Services may include any features the Owner desires to add in the Unit and the Community including, but not limited to, the following:

- Operations Applications (including software and mobile applications) to enable Resident to electronically control certain smart services via a computer using software or via a smart phone using a mobile application.

- Entry Gate and Exterior Door Access System to enable electronic operation of gates and exterior doors to permit entry to the Community or portions of the Community.

- Unit Door Lock to enable electronic operation of the door lock to the Unit.

- Thermostat to enable electronic operation of the thermostat and temperature settings in the Unit.

Some of the Services may require the use of equipment ("Equipment") as well as other hardware to be installed in the Unit.   Resident acknowledges that: (A) the Services are provided directly from a third-party provider; (B) the Owner is not a service provider; and (C) the Owner is not responsible for the Services or the Equipment provided by the provider of the Services.   RESIDENT ACKNOWLEDGES THAT NEITHER THE SERVICES NOR THE EQUIPMENT MONITOR FOR SECURITY, FIRE, OR MEDICAL INCIDENTS AT THE UNIT OR THE COMMUNITY. NEITHER THE SERVICES NOR THE EQUIPMENT SHOULD BE RELIED UPON FOR RESIDENT'S PERSONAL SAFETY OR THE SAFETY OF RESIDENT'S PROPERTY.

Owner will provide Resident notice if and when Owner has engaged a provider to provide any of the Services.  Resident acknowledges and represents that: (A) Resident will grant Owner, Owner's representatives, and contractors (including any provider of the Services) access to the Unit at reasonable times in accordance with this Lease and applicable law to install, maintain, repair, replace or remove the Equipment (B) Resident will follow all instructions the provider or Owner gives Resident for the proper use of the Services or the operation of the Equipment; and (C) it is Resident's obligation to ask questions of Owner or the provider in the event Resident does not understand how to use the Equipment properly or if Resident is unable to gain access to the Services.

The Services are subject to the terms of Owner's Privacy Policy (available at camdenliving.com, subject to change from time to time), and the applicable terms and conditions for the Services provided (collectively, the "Usage Terms").  Resident represents that Resident will review the applicable Usage Terms prior to using the Services to which the Usage Terms apply. By using the Services, Resident consents to the Usage Terms, including consent to the collection and use of Resident's information in accordance with the Usage Terms, including the transfer of this information to the United States or other countries for storage, processing, and use by Owner or the applicable provider.  IF RESIDENT DOES NOT CONSENT TO THE USAGE TERMS, RESIDENT MAY NOT USE THE SERVICES; instead, Resident will receive only the Basic Functionality of the Equipment.  "Basic Functionality" means the ability to use the Equipment in its most rudimentary or analog state.   If the Equipment includes thermostats, Resident should be able to manually adjust the temperature by manually adjusting the thermostat dial and if the Equipment includes door locks, Resident should be able to manually operate the door lock using either a traditional door key, an electronic key fob programmed by us, or a secure code that Resident manually enters into the door lock.  If Resident initially consented to the Usage Terms but later desires to retract Resident's consent, Resident must notify Owner's representative in writing and immediately cease using the Services and the Equipment.  As part of receiving the Services, Owner or the provider may provide Resident with certain communications, such as service

Owner's Agent Initials_____

Resident's Initials_____



© Camden, 2005   Revised January 2021

announcements and administrative messages, which Resident may opt out of at any time. Any information provided to Owner by Resident or a provider is subject to Owner's Privacy Policy, which governs the collection and use of Resident's information.

If Equipment is necessary to provide the Services, the Equipment will be supplied to Resident or installed within the Unit by Owner or the provider of the Services. Resident agrees not to damage, remove, or tamper with the Equipment. Owner or the provider may charge Resident for any costs incurred to replace or repair damaged, missing, or stolen Equipment, including applicable installation costs. Resident must supply any hardware, such as a computer or smartphone, that is necessary to use the Services. Unless Owner designates otherwise, Resident is responsible for providing and installing any batteries necessary to operate the Equipment.

OWNER MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE SERVICES OR THE EQUIPMENT. TO THE EXTENT PERMITTED BY APPLICABLE LAWS, OWNER DISCLAIMS, AND RESIDENT WAIVES ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SERVICES AND EQUIPMENT. OWNER MAKES NO REPRESENTATIONS OR WARRANTIES THAT THE SERVICES WILL BE AVAILABLE, UNINTERRUPTED, OR ERROR-FREE TO THE EXTENT PERMITTED BY APPLICABLE LAW, RESIDENT WAIVES ANY CLAIM THAT RESIDENT MIGHT HAVE OR MAKE AGAINST OWNER AS A RESULT OF RESIDENT'S ELECTION TO USE THE SERVICES OR EQUIPMENT. RESIDENT WAIVES ANY LIABILITY THAT OWNER MIGHT HAVE (WHETHER SUCH LIABILITY IS FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR OTHER DAMAGES) FOR ANY SUCH CLAIM. EXCEPT AS SET FORTH IN APPLICABLE LAWS, NO CHANGE, FAILURE, DISRUPTION, DEFECT, UNAVAILABILITY, OR UNSUITABILITY IN THE SERVICES OR EQUIPMENT CONSTITUTES AN ACTUAL OR CONSTRUCTIVE EVICTION, IN WHOLE OR IN PART, OR IN ANY WAY ENTITLES RESIDENT TO ANY ABATEMENT OF RENT OR RELIEVES RESIDENT FROM ANY OBLIGATION UNDER THIS LEASE.

Owner reserves the right to switch providers at any time for any reason, to change the types and quality of the Services or Equipment, or to terminate some or all of the Services or remove any Equipment at any time and for any reason in Owner's sole discretion (including, but not limited to, Resident's default of this Lease) with prior written notice of such changes or termination. If Owner terminates all of the Services, Resident's obligation to pay the increased rent, if any, set forth herein for the Services, shall cease on the date specified in the notice. If Owner terminates less than all of the Services, the increased rent, if any, will remain due in accordance with this Lease.

Any wireless or wireline network devices that Resident installs must comply with applicable FCC rules and regulations must not interfere with the Services provided to Resident or any other residents of the Community and must not interfere with wireless systems operated by Owner or the provider of the Services. Resident agrees not to tamper with the Services or Equipment provided to Resident or any other residents of the Community.

iv.    Technology Providers. Resident also acknowledges that the communications providers supplying the Technology Package amenities are independent contractors, which Owner may terminate or change in Owner's sole discretion, that the communications providers are responsible for all repairs or service, and that the Owner makes no representations or warranties with respect to any service, repair or warranty of any communications provider.

v.    Wireless Hi-Speed Internet. In the event that wireless hi-speed internet access service is provided to the Unit, Resident agrees to comply with all rules applicable to access and use of wireless hi-speed internet including complying with all local, state, federal and international laws and regulations which may apply to such access or use. Resident also agrees that neither the Owner nor the Owner's managing agents are responsible for security, viruses, controlling spam, malfunctions or interruption or speed of internet service to the Unit or the Community. To the extent allowed by applicable law, Resident holds the Owner

Owner's Agent Initials_____

Resident's Initials_____



© Camden, 2005    Revised January 2021

and its managing agents harmless from any and all claims relating to internet activity, malfunctions or interruption or speed of service.

vi.    <u>Technology Equipment.</u>  In the event that any wiring, cable, internet or technology-related equipment is provided in the Unit or in connection with the Technology Package Program, Resident agrees to maintain such wiring, cable or equipment in good condition and leave such wiring, cable or equipment in the Unit following Resident's occupancy. In the event that such wiring, cable or equipment is provided and either lost, stolen, damaged or otherwise not left in the Unit in good condition at the end of Resident's occupancy of the Unit, Resident shall pay the cost to repair or replace, as the case may be, such wiring, cable or equipment. In the event that wiring, cable or equipment is provided to Resident, Resident shall be responsible for returning such wiring, cable or equipment to the provider in accordance with the provider's instructions.  In the event wiring, cable or equipment is not provided to Resident either in the Unit or in connection with the Technology Package Program, Resident acknowledges that it is Resident's responsibility to obtain any wiring, cable or equipment necessary to receive the Technology Package.

d.    ___**_Front Door Trash Pickup_**___.  In the event front door trash pickup is included in Monthly Rent identified on page 1 of this Lease, Resident shall comply with all applicable rules established by Owner regarding the front door trash pickup.  Resident shall dispose of trash in appropriate receptacles in accordance with any rules or instructions provided by Owner.  Bulk items must be disposed of in the location provided by Owner. In the event that Resident fails to dispose of trash in appropriate receptacles or disposes of bulk items in the Community in violation of this provision, Resident shall pay Owner the greater of: (i) the cost of removing any inappropriately disposed of trash including bulk items; or (ii) $(fee will range per community).  Resident acknowledges that, to the extent allowed by applicable law, the Owner may discontinue front door trash pickup service by providing Resident at least 30 days' prior written notice of such discontinuation in service; in which case, the Monthly Rent will be reduced by the cost of front door trash pickup to Owner as identified in the Owner's notice effective as of the first day of the calendar month following 30 days from the date of Owner's notice. Additionally, in the event front door trash pickup costs (including costs paid by Owner for the trash disposal statement and any indirect costs by Owner associated with providing front door trash pickup service) increases, Owner shall have the right to increase the Monthly Rent by the amount of such increased costs (not to exceed $5.00 per month) by providing Resident at least 30 days' prior written notice.  In the event of such notice, the increased Monthly Rent will commence on the first day of the calendar month after the expiration of 30 days from the date of Owner's notice.

e.    ___**_Vendors._**___  Resident acknowledges that, from time to time, the Owner may distribute marketing materials from various vendors that have made arrangements with the Owner to provide services to residents of the Community. Resident acknowledges that, notwithstanding Resident's use of such vendors or any other vendors, Owner makes no representations or warranties that the communities infrastructure (including cabling or wiring for internet or other computer related services) are compatible with or failsafe when used with any particular vendor's services. Resident acknowledges that vendors serving residents generally in the Community are not affiliated with, not sponsored by or related to Owner unless Owner expressly advises Resident otherwise in writing and that Resident will not hold Owner responsible for the acts or omissions or services provided by such vendors. Resident represents that Resident will conduct Resident's own inquiry and due diligence with respect to retaining such vendors and releases the Owner from any and all liability, responsibility or claims of any nature whatsoever with respect to any services provided by any such vendors.

f.    <u>See State Addendum for additional provisions.</u>

13.    ___**_Animals._**___ Animals are not permitted in the Unit or the Community unless approved in writing by the Owner. The Owner will authorize an assistance animal for a disabled person in accordance with applicable provisions of fair housing laws, rules and regulations. Type and weight restrictions and deposit, fee and additional rent requirements for animals do not apply to assistance animals. In the event that an animal is allowed in the Community, Resident acknowledges that Resident must sign an animal addendum thereby agreeing to adhere to Owner's animal regulations, including any applicable breed or pet-type restrictions or animal weight limit, pay an additional security deposit, pay a nonrefundable animal fee and pay any applicable additional Rent required by Owner due to the presence of Resident's pet. In the event an additional security deposit is paid, Resident acknowledges that this additional deposit will become part of the general Security Deposit and may, to the extent permitted by applicable law, be used as security for Resident's payment of Rent and other charges due under this Lease whether or not the charges are related to Resident's pet. Resident acknowledges that animals, if any, allowed in the Community must be kept on a leash at all times when in the common areas and that Resident is responsible for cleaning up after Resident's pet. In the event that Resident violates any restrictions or policies regarding animals, Resident will be deemed to be in default of this Lease, in which case, Owner shall be entitled to pursue any and all rights and remedies it has against Resident. Owner's rights shall include the right to require Resident to immediately remove any unauthorized animal or sign an animal addendum and pay the appropriate deposits and fees. Resident shall be responsible for paying a fee of up to $500 per violation in the event that Resident fails to comply with these rules. Additionally, the Owner may call

Owner's Agent Initials_____

Resident's Initials_____

Page 10 of 20





the appropriate authorities and have the animal removed if: (i) there is an unauthorized animal in the Unit; (ii) the animal is left in the Unit for an extended period of time without being properly supervised; (iii) the animal has been abandoned; (iv) Resident has failed to care for a sick pet; or (v) the animal has been left unattended in the Community.

14.    ***Keys.*** Upon the execution of this Lease, Resident acknowledges that Resident has been provided with the keys identified on the Inventory and Condition Form. Resident agrees that the Owner's managing agent is entitled to have a key to the Unit. If a lock change is requested by Resident, such request must be in writing and Resident may be subject to a lock change fee.

15.    ***Permitted Use.*** Resident and all Occupants as listed on this Lease shall occupy the Unit during the term of this Lease and use the Unit solely for residential purposes. Resident shall not permit the Unit to be used for any other purpose.

16.    ***Security.***

   a.    Security-related mechanisms in the Community. Resident recognizes that no security devices or measures on the property or the facility itself (including underground parking or controlled access features) are fail-safe or designed to provide Resident, Occupants of the Unit or their respective guests with personal security of any type whatsoever. In the event the Community offers an intrusion alarm, Resident acknowledges that Resident has been given separate instructions on the proper operation of the alarm, that any alarm is a mechanical device, can be rendered inoperative at any time and requires proper operation by Resident with respect to coding and maintaining the alarm. Any charges resulting from the use of the alarm will be charged to Resident, including but not limited, to any false alarms with police, fire or ambulance response or other required governmental charges. In the event that Owner has engaged the services of a patrol service or patrol personnel, Resident acknowledges that any such patrol will not be equipped to provide personal security to Resident, Occupants of the Unit or their respective guests and will only serve as additional eyes and ears for the Owner's managing agent. In the event that the Community is equipped with simplex locks to the fitness center, laundry rooms, pool or other areas, Resident understands that pass codes are for Resident's use only and that Resident must accompany all guests. In the event the Community has cameras in the common areas, Resident acknowledges that: (i) the cameras may malfunction or be rendered inoperative; (ii) there is no guarantee or warranty that the cameras will function on a 24 hour basis or that images from the cameras will record or be stored or preserved; and (iii) Owner shall have no obligations to provide any images or recordings from the camera unless the release is properly requested by law enforcement personnel. Resident acknowledges that Owner is not and shall not become liable to resident, Occupants of the Unit or their respective guests for any injury, damage or loss whatsoever which is caused as a result of any problem, defect, malfunction or failure of the performance of any security-related mechanisms in the Community including, but not necessarily limited to, intrusion alarms, patrol personnel, access gates or locks to common area facilities available to Resident. Owner reserves the right to, at any time, increase, decrease, eliminate, or add any security-related measures or mechanisms or access-controlled devices or systems as it deems appropriate in its sole and absolute discretion.

   b.    Access Control System. Owner shall have the right but not the obligation to install or contract for the installation or provision of an Access Control System for the Community. Access Control System shall mean any surveillance, monitoring or other system intended to control access. By way of example, and not by limitation, this term may include electronic entrance gates, a manned or unmanned gatehouse, a roving attendant or a combination thereof.

   c.    Residents' Responsibility. Resident acknowledges that Owner does not represent or warrant that any security related mechanism: (i) will not be compromised, circumvented or malfunction; (ii) will prevent loss by fire, smoke, burglary, theft, holdup, or other criminal conduct; or (iii) will provide the detection which the system is designed or intended. Owner shall not be liable to the resident and occupants of any unit, their guests or invitees, as applicable, for any loss that may occur by reason of the criminal acts of others including, but not limited to, break-ins, burglaries or acts of vandalism. Each resident is responsible for protecting and insuring themselves in connection with such acts or incidents. TO THE EXTENT ALLOWED BY APPLICABLE LAW, THE PROVISION OF ANY SECURITY RELATED MECHANISM SHALL IN NO MANNER CONSTITUTE A WARRANTY OR REPRESENTATION AS TO THE PROVISION OR LEVEL OF SECURITY WITHIN THE COMMUNITY. OWNER DOES NOT GUARANTY OR WARRANT, EXPRESSLY OR BY IMPLICATION, THE MERCHANTABILITY OR FITNESS FOR USE OF ANY SECURITY RELATED MECHANISM OR THAT ANY SUCH MECHANISM (OR ANY OF ITS COMPONENTS OR RELATED SERVICES) WILL PREVENT INTRUSIONS, FIRES, OR OTHER OCCURRENCES, REGARDLESS OF WHETHER OR NOT THE MECHANISM IS DESIGNED TO MONITOR SUCH OCCURRENCES.

   d.    Patios and Balconies. Resident acknowledges that Resident and all guests of Resident shall comply with all Community Policies with respect to the use and occupancy of patios and balconies. Resident further acknowledges that Resident will be responsible for assuring that: (i) the patio or balcony is not overcrowded; (i) no items will be placed on the patios or balconies that cause an excessive amount of weight on the patios

Owner's Agent Initials_____

Resident's Initials_____

Page 11 of 20


7/31/2023


8/1/2023

© Camden, 2005    Revised January 2021

or balconies; (iii) no items will be placed on the patios or balconies that could blow or fall off of the balcony or patio; and (iv) no items will be placed on or over the balcony or patio railings.

17.   **_Lakes._** Resident acknowledges that the Community's lakes, if any, are for aesthetic purposes only. Swimming and boating are not allowed in lakes and waterways by Resident, Occupants of the Unit or guests. Fishing, if permitted at all, is on a "catch and release" basis only. Resident shall not use or permit any guests or Occupants to use the lakes for swimming, bathing, boating or any other recreational activity. Resident acknowledges that the lakes can be deep in places and that there are no fences around or lifeguards at the lakes and that the use of the lakes for any other reason by Resident or any guests or Occupants is strictly prohibited. Resident further agrees that Owner is not liable to Resident, Resident's guests or any other occupants for personal injury or damage or loss resulting from the use of the lakes by Resident or Resident's guests or Occupants. Resident must take whatever steps necessary to assure compliance with this provision by you as well as Resident's guests and Occupants who reside in the Unit. Resident agrees to comply with any and all signs and rules and regulations which Owner may, from time to time, adopt with respect to the lakes and to assure such compliance by Occupants and guests.

18.   **_Wild Animal Hazards._** Resident acknowledges that Resident is aware that the Community contains or is located adjacent to certain undeveloped property which may contain or harbor wild animals, snakes or insects. Do not feed these animals. Resident is aware that wild animals present certain inherent and substantial hazards to persons and property. Despite these hazards, Resident has chosen to rent the Unit and hereby fully assumes the risk of these hazards. Owner and Owner's respective agents and employees shall not be liable for any injuries, claims, deaths, damages, or losses to persons or property (including but not limited to **animals** or vehicles of Resident or Occupants or their respective guests and invitees) in any way caused by or related to wild animals which either reside within the Community or travel through the Community. To this end, it is expressly understood and agreed by the parties that Owner and Owner's representatives are not insurers and that insurance covering personal injury and property loss or damage occurring on, in or near the Unit shall be obtained by Resident to cover any injury, claim, death, damage or loss to Resident, or Resident's guests or invitees may incur or suffer. It is further understood and agreed by the parties that the Rent being charged Resident is not sufficient to guarantee that no loss, damage or injury will occur.

19.   **_Insurance._**

a.     _Insurance Requirements._   Owner requires that Resident maintain, at Resident's sole expense, renter's insurance during the term of this Lease and any subsequent renewal periods to help protect Resident, Resident's property and Owner's property. The limits of liability must be in an amount not less than the lesser of (i) $100,000 per occurrence or (ii) the maximum amount permitted by applicable law. Resident must be listed as a named insured on any required insurance policy. The Community must be listed on the policy as an "additional insured" or "interested party". Resident agrees to provide Owner with proof of all required insurance issued by a licensed insurance company of the Resident's selection.

b.     _Referral of Insurance Provider._   Resident acknowledges that, if Owner informs Resident of an insurance carrier that provides Resident with an opportunity to purchase renter's insurance or liability insurance policies, Owner is doing so only for the purpose of informing Resident and not, in any way, to aide in the transaction of the business of the carrier. Owner will not discuss specific insurance policy terms or conditions with Resident. Resident acknowledges that Owner does not engage in the business of insurance by receiving or collecting any consideration for insurance, including, but not limited to, a premium. Owner does not directly or indirectly act as an agent for or otherwise represent or assist an insurer or person in any aspect of the business of insurance including, but not limited to, soliciting, negotiating, procuring or effectuating insurance or a renewal of insurance or disseminating information relating to coverage or rates. The Owner does not own or operate an insurance company and makes no guarantees, representations or promises concerning insurance or services provided by an insurance carrier, whether or not Owner identifies an insurance carrier for Resident to call. Resident is under no obligation to purchase renter's insurance or liability insurance through any specific carrier.

c.     _Failure to Maintain Insurance._   In the event Resident fails to maintain renter's insurance as required by this section, Resident shall be in violation of the Lease; in which case, Owner shall be entitled to pursue any rights or remedies. Additionally, Resident shall be required to pay, as a liquidated damage, as a result of Resident's default, an insurance violation fee of $25.00 per month on or before the first day of each month following Resident's default, to Owner as additional rent. Resident acknowledges that: (i) the insurance violation fee assessed in this section is a reasonable estimate of uncertain damages to the Owner that is incapable of precise calculation and results from Owner's time, cost and additional exposure resulting from Resident's failure to maintain the proper level of insurance; (ii) Owner may, but is not obligated to, use the insurance violation fee to purchase coverage for property damage to protect Owner from damage caused by Resident; (iii) if Owner purchases additional insurance, such insurance will not protect Resident against loss or damage to Resident's personal property or belongings; and (iv) subrogation will be allowed with respect to any claims Owner's insurance carrier may have against resident.

Owner's Agent Initials_____

Resident's Initials_____




© Camden, 2005   Revised January 2021

d.      *Protection of Resident's Property.*  Owner is not responsible for, and will not provide fire or casualty insurance for, the personal property (including any vehicles) of Resident or Occupants of the Unit. Neither Owner nor Owner's managing agent shall be liable to Resident, other Occupants of the Unit or their respective guests for any damage, injury or loss to person or property (furniture, jewelry, clothing, etc.) from fire, flood, water leaks, rain, hail, ice, snow, smoke, lightning, wind, explosions, interruption of utilities, the criminal acts of others or other occurrences unless such damage, injury or loss is caused exclusively by the negligence of Owner. Owner has no duty to remove ice, sleet, or snow from any areas within the Community. <u>Resident assumes all risks with respect to, and Resident is required to secure insurance in accordance with subparagraph (a) above.</u> Unless prohibited by law, Resident waives any insurance subrogation rights or claims against Owner, Owner's managing agent or their respective insurers.

20.     **Notice of Injuries.** In the event that Resident or any Occupants or any of their guests or visitors suffer any damage or injury for which they believe that Owner might be liable, the Resident agrees to notify Owner in writing within ten (10) days of the occurrence of the injury, or as soon after the injury as practical, whichever is sooner. The failure of Resident to notify Owner of any of these injuries or damages will be a breach of this Lease, and to the fullest extent allowed by applicable law, Resident will be responsible to Owner for any loss which Owner might suffer arising out of Resident's failure to notify Owner, including Owner's inability to determine the cause or responsibility for the injuries or damages.

21.     **Conduct of Resident, Occupants and Guests.** Resident agrees that Resident, Occupants of the Unit or their respective guests or invitees shall not: (i) be loud, obnoxious, disorderly, boisterous, or unlawful; (ii) disturb or threaten the rights, comfort, or convenience of others in or near the Community; (iii) disturb or disrupt the business of Owner or Owner's managing agent; (iv) engage in or threaten violence; (v) be arrested for or engage in criminal conduct (felony or misdemeanor) involving actual or potential risk of harm to a person or any sex-related conduct; (vi) violate criminal laws, regardless of whether arrest or conviction occurs; (vii) display, discharge, or possess a gun, knife or other weapon in a way that may alarm others; (viii) possess, sell or manufacture illegal drugs or drug paraphernalia in the Unit or anywhere else at the Community; (ix) maintain the Unit in an unclean, unkempt or hazardous condition; (x) bring or store hazardous materials in the Unit or in the community; or (xi) injure the reputation of the Owner or the Owner's managing agent by making bad faith allegations against the Owner or Owner's managing agent to others. Solicitation will not be allowed at the Community unless written permission from the Owner or Owner's managing agent is given.

22.     **Policies.** Resident agrees to abide by any and all posted rules and community policies including, but not limited to, rules with respect to noise, disposal of refuse, animals, parking and use of common areas. Further, Resident agrees to abide by all amendments and additions to said rules after due notice of any such amendments or additions. At the time of execution of this Lease, Resident acknowledges that Resident has signed and received a copy of all current community policies pertaining to the Unit and the Community.

23.     **Fitness Room And Other Facilities.** The use by Resident, Occupants and guests of the fitness room and other common facilities, including use of any fitness equipment or weights in the fitness room or computers or monitors in the fitness room or any other common facilities, is at the user's sole risk and Resident assumes full responsibility for any injuries which may result from the use of the fitness room or other common facilities by Resident, Occupants or guests. Resident shall not use the equipment, including computers or monitors in the fitness room or other common facilities to display or gain access to pornographic or other offensive material. When displaying any content on computers or monitors in the fitness room or other common facilities, Resident shall be mindful of others in the area and turn off the speakers or use headphones. Resident agrees to indemnify and hold harmless Owner, Owner's managing agent and their respective agents and employees from and against any and all claims or demands, costs or expenses, arising out of or in any way related to use by Resident, Occupants and guests of the fitness room and other common facilities including, but not limited to, any personal injuries, damages or other losses. Resident shall assure compliance with all posted rules.

24.     **Satellite Dishes.** To the extent allowed to be restricted by Owner under applicable law, Resident agrees t that:

a.      No antenna or satellite dish may exceed one meter (39 inches) in diameter;

b.      No antenna or satellite dish may protrude beyond the horizontal or vertical space that is leased to the Resident for the Resident's exclusive use, including any patio area leased by Resident (installation is not permitted on any parking area, roof, exterior wall, window, windowsill, fence, common areas or in any other area that other residents are allowed to use, which may not result in an optimal signal or any signal at all). Allowable locations may not provide an optimal signal or any signal at all;

c.      An antenna or satellite dish must serve only one unit;

d.      No antenna or satellite dish may be attached to a balcony railing or fence except by a bracket that does not require holes to be made in the railing or fence;

Owner's Agent Initials_____

Resident's Initials_____

Page 13 of 20


7/31/2023


8/1/2023

© Camden, 2005   Revised January 2021

e. Installation of the antenna or satellite dish shall occur only between the hours of 8:00 a.m. and 9:00 p.m.;

f. The installation of the antenna or satellite dish shall not cause any holes to be made in any ceiling, exterior wall, window or door or the Unit or the roof, walls, windows or doors of any building in the Community;

g. The installation of the antenna or satellite dish must conform to local fire and safety codes and building codes;

h. Resident shall be solely responsible for maintaining any antenna or satellite dish installed and all related equipment;

i. Resident must remove the antenna or satellite dish and other related equipment when Resident moves out of the Unit; Resident will be responsible for paying for any damages and for the cost of repairs or repainting which may be reasonably necessary to restore the Unit to its condition prior to the installation of the antenna or satellite dish or related equipment.

Resident hereby releases, indemnifies and holds harmless Owner, Camden Development, Inc. as well as their respective affiliates, owners, shareholders, partners, officers, directors, employees, agents, successors and assigns from and against any and all obligations, liabilities, claims, losses or actions of any nature whatsoever, whether in contract, in tort or otherwise relating to, arising out of, or in any way connected with the installation, use or maintenance of an antenna or satellite dish in the Unit or the Community, including the balcony, balcony railing or patio which may be deemed to be a part of the Unit. Resident shall pay, upon demand, Owner for any and all expenses, exceeding ordinary wear and tear, arising out of or caused by the installation, use or maintenance of an antenna or satellite dish.

25. ***Reimbursement.*** In the event that any damage or loss to Owner is caused by Resident, Occupants of the Unit or their respective guests or invitees (including contractors), Resident shall be liable for such damage or loss and shall immediately reimburse Owner for such damage or loss. **Unless caused by the Owner's negligence, the Owner is not liable for and Resident must pay for repairs, replacement costs and damage to the following if occurring during the term of this Lease (including any month-to-month renewal): (i) damage to doors, windows or screens; (ii) damage from windows or doors left open; and (iii) damage from wastewater stoppages caused by improper objects in lines exclusively serving the Unit. Resident acknowledges that the repairs, replacement costs and damages for which Resident will be responsible include damages caused by Resident, Resident's household members, animals, guests or agents. At Owner's discretion, Resident shall pay for such repairs in advance; any delay or postponement in demanding payment for such sums shall not waive Owner's right to demand such payment.**

26. ***Smoke Alarms.*** Resident acknowledges that the smoke alarm or smoke alarms (if any are required to be in the Unit pursuant to applicable law) in the Unit are in good working order at the beginning of Resident's possession of the Unit. Resident agrees that Owner's duty to inspect and repair a smoke alarm, pursuant to applicable law is expressly conditioned upon the Resident giving the Owner written notice of a malfunction or request to Owner that the smoke alarm be inspected or repaired. Resident must make Resident's request for installation, inspection or repair in writing. Resident must not alter, disable or cover smoke alarms and, to the fullest extent allowed by applicable law, Resident is responsible for replacing all smoke alarm batteries.

27. ***Default by Owner.*** Owner agrees to abide by applicable law regarding repairs and performance under this Lease. ALL REQUESTS FOR REPAIRS MUST BE IN WRITING. Unless exercising a right specifically granted by applicable law, Resident shall not be entitled to any abatement of Rent for any inconvenience or annoyance in connection with Owner's repairs or maintenance and may not withhold Rent under any circumstances, regardless of any alleged failure by Owner to repair or maintain, unless otherwise provided by applicable law. **To the extent allowed by applicable law, Resident waives any ability or right to serve as a representative party for others similarly situated or participate in a class action suit or claim against the Owner or the Owner's managing agents. Resident acknowledges that this waiver does not, in any way, affect Resident's right to pursue any rights or remedies Resident may have against Owner as a result of Owner's default. This waiver only restricts Resident's ability to serve as a representative party or participate in a class action suit or claim against Owner or Owner's managing agents.**

28. ***Default by Resident.*** If Resident fails to pay Rent or other lawful charges when due or gives false information on any application for rental, or if Resident, Occupants or their guests fail to comply with any other term, covenant or condition of this Lease, Owner may pursue any rights or remedies provided by applicable law. (See attached State Addendum for additional provisions.) In addition to the foregoing, in the event Resident defaults under this Lease, Resident shall be liable to the fullest extent allowed by applicable law for repayment of the value of any rent concessions received by Resident and for any court costs and reasonable attorneys fees incurred by Owner to enforce this Lease (including any attorneys' fees in any court action in which the

Owner's Agent Initials_____

Resident's Initials_____

 

© Camden, 2005  Revised January 2021

Owner prevails) plus interest on all unpaid amounts at the rate of eighteen percent (18%) per annum from the due date until paid. Provided, however, if the assessment of interest at the rate of eighteen percent (18%) per annum violates applicable usury laws, the parties agree that the rate of interest on all unpaid amounts shall be the maximum rate allowed by applicable law, and Resident will not be required to pay interest or other amounts in excess of the amount allowed by applicable law. In the event of a default, Owner may, but shall not be obligated to, accelerate the rent for the remainder of the term of this Lease or hold Resident responsible for rent and other charges on a monthly basis until the end of the Lease term as rent and other charges become due. Amounts due are subject to any duty Owner has under applicable law to mitigate damages. Owner may report unpaid Rentals or other charges to the applicable credit reporting agencies for recordation in Resident's credit record. **RESIDENT HEREBY AUTHORIZES OWNER OR OWNER'S AGENTS TO OBTAIN AND HEREBY INSTRUCTS ANY CONSUMER REPORTING AGENCY TO FURNISH A CONSUMER REPORT UNDER THE FAIR CREDIT REPORTING ACT TO OWNER OR OWNER'S AGENTS TO USE SUCH CONSUMER REPORT IN ATTEMPTING TO COLLECT ANY AMOUNTS DUE AND OWING UNDER THIS LEASE OR FOR ANY OTHER PERMISSIBLE PURPOSE.**

29.     **_Entry._** Subject to any requirements provided by applicable law, Owner (and any agent or vendor authorized by Owner) shall have the right to enter the Unit (as well as any garage or storage unit leased by Resident) at reasonable times for any reasonable business purpose which includes, but is not necessarily limited to, making repairs or replacements, doing preventative maintenance, leaving notices, removing health or safety hazards, inspecting the Unit in case of emergency, allowing entry by law enforcement officers, showing the Unit to prospective residents or buyers and showing the Unit to lenders, appraisers, contractors, insurance agents or other vendors of the Owner.

30.     **_Alterations._**

        a.      _Generally._ Unless required to be permitted by applicable law, Resident shall not make or permit to be made any alterations, additions or attachments to the Unit or the Community (including any garage or storage unit used by Resident) or any part thereof including, but not limited to, the balcony or overhang, or change or add any lock, alarm or camera system without the prior written consent of Owner. At any time, Owner may remove, at Resident's sole cost and expense, any fixtures, alterations, additions or property which does not conform with this Lease or any rules or regulations established by Owner.

        b.      _Video Doorbell, Smart Doorbell or Other Video Surveillance Devices._ Resident shall not be permitted to install or cause to be installed any video doorbell, smart doorbell, or other video surveillance device on the exterior of the Unit without first obtaining the written consent of Owner. Any approved installation must be only on the area immediately surrounding the front door of the Unit and any installation work must be performed in a way that is the least intrusive method available, is not disruptive to others and is in compliance with manufacturer's instructions, this Lease, and any additional instructions, guidelines and specifications established by Owner or Owner's managing agent.

        The Owner shares in security concerns; however, no security system is a failsafe against crime. Resident acknowledges that Owner does not make any express or implied warranties of safety or security with respect to the installation or use of any such device. Such warranties are expressly disclaimed by the Owner.

        Resident further agrees that Resident shall not use any video doorbell, smart doorbell, or other video surveillance device in any way to obstruct, interfere with, or infringe upon the rights, solitude, peace, or privacy of other residents, occupants, or guests. Resident agrees not to use any video doorbell, smart doorbell, or other video surveillance device for any improper, unlawful, or objectionable purpose. Resident acknowledges that they may be subject to video surveillance and recording while in the common areas and amenities of the Community.

        In the event that Resident fails to comply with this provision or any other requirements of Owner with respect to the installation or use of a video doorbell, smart doorbell, or other video surveillance device, Resident shall be in default of this Lease. In addition to other remedies for Resident's default, Owner shall have the right to immediately require Resident to remove any device related to Resident's default. Resident agrees to reimburse Owner for, and hereby indemnifies and defends Owner and any parties related to Owner from and against, any and all claims and liabilities incurred by Owner or related parties as a result of any violation of this provision, or any statute, ordinance, regulation or other governmental restriction by Resident, Occupants, or guests.

31.     **_Construction, Casualty and Environmental Issues._**

        a.      _Construction._ In the event that the Community is under construction, Resident agrees to observe all warning signs and blockades and stay away from the construction areas.

Owner's Agent Initials_____

Resident's Initials_____

Page 15 of 20




© Camden, 2005    Revised January 2021

b.    Mold Related Conditions.  Resident represents that at the commencement of Resident's occupancy of the Unit, Resident has inspected the Unit and has found the Unit to be free of signs of mold and mold related conditions which may adversely affect Resident's health. In the event that Resident discovers mold, water leaks, water damage or moldy, musty odors in the Unit or discoloration or staining in the sheetrock of the Unit, at any time during Resident's occupancy of the Unit, Resident shall immediately provide written notice to Owner of any such condition. Resident agrees that it is Resident's responsibility to assist the Owner to prevent excessive moisture build-up and mold growth. Resident acknowledges that: (i) excessive moisture can collect from a wide variety of sources; (ii) moisture build-up in carpets and crevices can result from shower or bathtub overflows, washing machine overflows or leaks, cooking spills, plant watering overflows or pet urine accidents; and (iii) insufficient drying of water, carpets or carpet pads can result in mold under the carpet surface. Resident shall be responsible for: (i) promptly reporting to Owner any signs of water leaks or water infiltration, standing water, condensation on interior surfaces, high humidity, musty smells or any signs of mold and any air conditioning or heating system problems; (ii) keeping all areas of the Unit clean and free of water accumulation, removing visible moisture accumulation on windows, walls, ceilings and other surfaces; (iii) being attentive to washing machine leaks, overflows or spills; and (iv) maintaining proper ventilation of the Unit and preventing conditions that are conducive to mold growth including controlling humidity and moisture levels in the Unit through proper operation of the air conditioning and heating systems and plumbing fixtures.

c.    Resident's Compliance with Rules.  Resident shall be responsible for any damages caused by the failure of Resident, Occupants of the Unit or their guests or invitees to comply with instructions, rules or regulations established by Owner or Owner's agents or contractors including, but not limited to: (i) damages caused when Resident fails to cooperate or follow instructions from Owner or Owner's agents or contractors; (ii) damages caused to pipes when freeze guidelines are not followed; (iii) damages resulting from Resident's failure to allow entry or interference or Resident's interruption with work being performed by Owner or Owner's agents or contracts; and (iv) damages caused by Resident's failure to maintain utilities in the Unit. To the extent permitted by applicable law, the Owner is not responsible for conditions, damages or injuries that result from Resident's failure to maintain the Unit in accordance with this provision.

d.    Owner's Right to Terminate Lease or Temporarily or Permanently Close or Restrict Access to Common Areas, Amenities and Services.

(i)    Unless otherwise provided by applicable law, the Owner may, but is not obligated to, terminate this Lease by giving no less than twenty-four (24) hours' notice to Resident if the Unit or the Community in general is rendered uninhabitable due to: (A) fire or catastrophic damage; (B) environmental or health issues including, but not limited to, the existence of mold, radon gas, bed bugs, structural defects, disease, pandemic, riot, protest, civil disobedience or any other condition that may affect the habitability of the Unit; (C) a condemnation taking; or (D) any causes beyond the control of the Owner. Unless otherwise provided by applicable law, the Owner may terminate this Lease by giving no less than thirty (30) days' notice to Resident if the Unit or the Community in general is undergoing, or about to undergo, repairs or rehabilitation (not caused by fire, catastrophic damage, environmental or health issues, condemnation taking or causes beyond the control of the Owner) which will render the Unit or the Community in general uninhabitable, as determined by Owner in its sole opinion. Resident understands and agrees that the Owner may, at any time, convert the Community to a condominium or cooperative development; if the Community is converted and the Unit is to be sold to the public, Owner may elect to terminate this Lease by giving the Resident no less than thirty (30) days written notice or within such other time frame allowed by applicable law. In the event of Owner's termination under this section, Resident shall vacate the Unit and remove all of Resident's personal belongings from the Unit and Rent will be prorated accordingly through the termination date.

(ii)   Unless otherwise provided by applicable law, the Owner may, but is not obligated to, close or restrict access to common areas, amenities or service by giving or posting written notice if any areas of the Community are affected by: (A) fire or catastrophic damage; (B) environmental or health issues including, but not limited to, the existence of mold, radon gas, bed bugs, structural defects, disease, pandemic, riot, protest, civil disobedience or any other condition that may affect the responsible operation of the Community as determined by Owner; or (C) any causes beyond the control of the Owner.  In the event Owner temporarily or permanently closes or restricts access to common areas, amenities or services, such closure or restricted access shall not entitle Resident to deduct or withhold rent or other charges due under this Lease.

e.    Odors.  Resident agrees that, to the fullest extent allowed by applicable law, Owner shall have no duty to make the Unit smoke-free or odor-free to Resident's satisfaction, particularly where smoke, odors or smells are caused by others in the Community. Resident acknowledges that certain smells (to include cooking

Owner's Agent Initials_____

Resident's Initials_____

Page 16 of 20




© Camden, 2005   Revised January 2021

certain types of food), odors, and tobacco smoke caused by Resident or others in the Community have the capability of penetrating walls, ceilings, and floors and Resident further agrees that this reality is inherent in any multi-family living environment such as condominiums, apartments or any other multi-family housing communities. Resident agrees that it is impossible or unreasonably impractical for Owner to prevent odors, smoke, and other smells from entering the Unit from neighboring rental units and, except as provided by law, Owner has no duty to prevent odors, smoke and other smells from entering the Unit from neighboring rental units.

f.      Noises. Resident acknowledges that, due to the inherent nature of multifamily living environments, there is no guaranty that the Unit will be quiet, safe, or peaceful. Resident agrees that certain everyday sounds such as walking, talking, cleaning, using common appliances, and the occasional entertaining of guests will penetrate walls, floors, and ceilings, and as such, Resident agrees that Owner cannot guarantee that Resident will have a quiet and serene living environment. As such, Resident agrees that it is impossible or unreasonably impractical for Owner to prevent noises or sounds from penetrating the walls, floors, and ceilings of the Unit. Except as provided by law, Owner shall have no duty to prevent noises or signs from penetrating the walls, floors and ceilings of the Unit.

g.      Bed Bugs and Pest Control. Resident acknowledges that: (i) bed bugs can be transported to the Unit through bedding, clothes, fabrics or other items moved by Resident into the Unit; and (ii) if bed bugs infest the Unit, treatment involves not only the Unit but also the surrounding units. Resident represents that Resident has not had a previous issue with bed bugs and that no bed bugs will be transported into the Unit by Resident. In the event that a bed bug issue arises in the Unit, Resident shall be responsible for: (i) washing all clothes, bed sheets, draperies, towels, etc. in extremely hot water; (ii) thoroughly cleaning all luggage, handbags, shoes and clothes; and (iii) cooperating with the Owner's remediation efforts including immediately disposing of mattresses, seat cushions or other upholstered furniture, if requested. In the event that the Community has regular pest control treatments, unless pest control is included in the Total Monthly Rent identified on page 1 of this Lease, or otherwise prohibited by applicable law, Resident agrees to pay the monthly charge of $3.00 for pest control service which will be added as a separate line item on the bill Resident receives for water, sewer and trash services. In the event there are bed bugs or other pests in the Unit not caused by the Owner, Resident agrees to pay Owner, upon demand, for all bed bug-related pest control treatments, which Resident acknowledges may involve treatment of not only the Unit but also surrounding units in the Community.  In the event that Resident's representations with respect to the bed bugs is untrue or Resident fails to comply with any terms of this provision, Resident shall be deemed to be in default of this Lease; in which case, Owner shall be entitled to pursue any rights or remedies available under the Lease or applicable law including, but not limited to, terminating the Resident's right to possession of the Unit.  Resident hereby agrees that the Owner may, but shall not be obligated to, give twenty-four (24) hours' notice prior to the application of a pesticide in the Unit. Provided, however, if Resident requests the application of the pesticide, no prior notice is required. Residents who have concerns about specific pesticides shall notify Owner in writing.  If Resident desires to leave the Unit during the period of application, Resident agrees that no offset of rent, damages, or any claim whatsoever shall be sought against Owner. Resident also agrees to release and hold Owner harmless from any allergic reactions or other medical conditions as a result of the application of any pesticide.  If bed bugs are determined to be present in the Unit, Owner may, at its sole discretion, and to the extent allowed by applicable law, terminate this Lease and require Resident to vacate the Unit and move all of Resident's personal property including furniture, clothing and all other property out of the Unit. Resident acknowledges that Owner's right to terminate this Lease and obtain possession of the Unit is regardless of who is responsible for causing the infestation or presence of bed bugs.

32.     **_Parking._** Resident shall comply with all rules and regulations pertaining to parking in the State Addendum and Community Policies in addition to the following:

a.      General Guidelines. Owner reserves the right to designate and control the method, manner and time of parking in parking spaces in and around the Community. Unless Owner notifies Resident otherwise, Resident's parking space(s) shall be unassigned. Neither Resident nor Occupants of the Unit nor their respective guests or invitees (including contractors) or others shall park in NO PARKING ZONES or other restricted areas. Vehicles parked in restricted areas will be subject to being towed in accordance with applicable law. Vehicles that have expired registration or inspection stickers or license tags or are inoperable are subject to being towed at the vehicle owner's expense according to applicable law. Additionally, vehicles may not be stored in the parking area of the Community. If any vehicles are parked in the Community for a period of 15 days or more without being moved, the vehicles will be considered abandoned and subject to being towed in accordance with state law. Resident shall only be allowed to wash vehicles in designated areas of the Community; if no areas have been designated, Resident shall not wash vehicles in the Community. Resident shall not repair vehicles in the Community. Resident shall not use the Community's electrical outlets for any reason without Owner's prior written permission including, but not limited to, charging electric vehicles. Vehicles parked in tow away zones, fire lanes, reserved parking, disabled parking or blocking a trash receptacle are subject to being towed at the vehicle owner's expense in accordance with applicable law. All posted speed limits must be observed. When a speed limit is not posted, the speed limit in the Community is 10 MPH. Motorcycles and motorbikes are considered motor vehicles and should be treated as such. Unless the Owner provides written

Owner's Agent Initials_____

Resident's Initials_____





© Camden, 2005   Revised January 2021

consent and the appropriate documentation is provided, no trailers, motor homes, unauthorized boats, campers or large trucks are allowed on any parking facilities. Resident shall not park a motor vehicle on the lawn or sidewalks, or any other areas not designated as proper parking facilities, even when moving into or out of the Unit. Vehicles taking up more than one parking space will be subject to being towed at the vehicle owner's expense in accordance with applicable law. Neither Owner nor Owner's management personnel shall be liable for any damages or costs arising out of any claims, loss, damage or liability from towing unauthorized vehicles from the Community. Resident hereby indemnifies and holds harmless the Owner, the Owner's managing agent as well as their respective officers, employees, agents, successors and assigns from and against all damages, loss, or liability (including attorneys' fees and court costs) arising out of or connected with the towing of unauthorized vehicles owned or operated by Resident, Occupants of the Unit or their respective guests or invitees (including vendors) from the Community.

b.    Garages and Carports. In the event the Community offers the use of a garage or a carport in addition to your Unit, Resident acknowledges that the garage or carport, as the case may be, is for parking Resident's vehicle only; neither garages nor carports are to be used for storage. The storage space, if any, provided with the Unit is to be used for storage needs. Owner may change Resident's designated parking space, garage or carport assignments during the term of this Lease by providing Resident with at least 10 days' prior written notice of such reassignment. In the event of a reassignment, Resident shall sign the appropriate documents requested by Owner to evidence the reassignment.

33.    ***Owner's Acceptance of Mail Packages.*** In the event that Owner accepts delivery of Resident's mail or packages, Resident acknowledges that Owner is not responsible for lost, stolen or damaged items and Resident releases Owner from all liability with respect to the acceptance or storage of any mail or packages. Management reserves the right to refuse any electronic devices and exceptionally large and/or heavy packages and may limit the number of packages accepted.  If packages are not picked up within three (3) working days, Management reserves the right to return them.

34.    ***Notices.***

a.    To Resident.  Resident represents that Resident has provided Resident's current electronic mail address to the Owner and will immediately notify the Owner in the event that Resident's electronic mail address changes for any reason.  Notice to Resident for any reason under this Lease shall be proper if given by any method allowed by applicable law or by first class mail, certified mail, return receipt requested, overnight delivery, or by hand delivery to the Unit or to Resident at the address of the Unit. Notice to Resident shall also be proper, if permitted by applicable law, by telefax to a telefax number provided by Resident or, unless Resident instructs Owner otherwise in writing, by electronic mail at the electronic mail address provided by Resident.  Notice to Resident for all purposes, unless applicable law provides otherwise, shall be considered as having been given and complete on the date such notice is postmarked, placed in overnight delivery, or hand delivered to Resident at the address of the Unit or the date such notice is telefaxed or electronically mailed. If notice is being provided by Owner to Resident and there is more than one Resident under this Lease, at Owner's discretion, notice to one Resident shall constitute notice to all Residents.  Additionally, if notice (including notice requesting service or permitting entry into the Unit) is being provided to Owner by Resident and there is more than one Resident under this Lease, at Owner's discretion, notice from one Resident shall constitute notice from all Residents.

b.    To Owner.  Notice to Owner for any reason under this Lease shall be proper if given by any method allowed by applicable law or by first class mail, certified mail, return receipt requested, overnight delivery, or by hand delivery to the Owner or the Community Manager in the management office of the Community. Notice by mail shall be to the address of the Community as identified on page 1 of this Lease. The name of Owner's managing agent of the Community, and the party who is authorized to act for and on behalf of Owner for the purpose of receiving notices from the Resident, is Camden Development, Inc., c/o Community Manager. Resident shall not rely on electronically mailed notices to Owner. Notwithstanding the foregoing, Owner shall also have the option of accepting, but not the obligations to accept, electronically mailed notices from Resident in Owner's sole discretion.

35.    ***Lease Subordination.*** This Lease is and will be subject and subordinate to the lien and provisions of any mortgages or deeds of trust now or hereafter placed against the Community or against Owner's interest or estate in the Community, and any renewals, modifications, consolidations and extensions of such mortgages or deed of trust, without the necessity of the execution or delivery of any further instruments by or to Resident to effect subordination. If any future mortgagee elects to have this Lease subordinated to the lien of such mortgagee's mortgage or deed of trust, and gives notice of such election to Resident, Resident shall execute any appropriate documents to subordinate this Lease to the lien of such mortgage or deed of trust. Resident will execute and deliver upon request from Owner, such further instruments evidencing the subordination of this Lease to any mortgage or deed of trust. In the event of foreclosure or the exercise of the power of sale under any mortgage or deed of trust against the Community, Resident will, upon request of any person or party succeeding to Owner's interest as a result of such proceedings, attorn to such successor in interest and recognize such successor in interest as Owner under this Lease; provided, however, unless otherwise provided

Owner's Agent Initials_____

Resident's Initials_____

Page 18 of 20





by applicable law, in no event shall Resident have the right to terminate this Lease in the event of foreclosure by any lienholder of the Community.

36. **_Disclosure of Information._** Resident hereby authorizes Owner to disclose information, upon request, relating to Resident's occupancy or other information in Resident's lease file for law-enforcement, governmental or business related purposes.  Mortgage companies may be invoiced a minimum of $25.00 per report for rental history inquiries.

37. **_Verbal Representations and Waiver._** Neither Owner nor any of Owner's representatives have made any oral promises, representations, or agreements. This Lease is the entire agreement between Resident and Owner. Owner's representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it, unless in writing, and have no authority to make promises, representations, or agreements that impose duties (including duties related to security issues) or other obligations on Owner or Owner's representatives unless in writing. The failure by Owner or Owner's managing agent to enforce any terms of this Lease shall not constitute a waiver by Owner or Owner's managing agent of the right to enforce the terms of the Lease at any subsequent time. The acceptance of Rent due after any default shall not be construed to waive any right of Owner or affect any notice given or legal action commenced.

38. **_Applicable Law._** This Lease shall be governed by the laws of the state in which the Unit is located; this Lease is performable and venue for any action shall be proper in the county in which the Unit is located.

39. **_Partial Invalidity._** If any section, clause, sentence, word or provision of this Lease or the application thereof to any party or circumstances shall, to any extent, be or become invalid or illegal, and such provision shall thereby become null and void, the remainder of this Lease shall not be affected thereby, and each remaining provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

40. **_Liability of Owner's Managing Agent._** Resident acknowledges that Camden Development, Inc. is signing this Lease as agent, and not as principal, for the Owner whose assumed name is the name of the Community. Accordingly, Resident agrees that it will not hold Camden Development, Inc. responsible or liable for compliance with this Lease and that Resident's sole cause of action for breach of this Lease will be against Owner. Resident understands that Camden Development, Inc. is relying upon the statements contained in this paragraph as a basis for signing this Lease as agent on behalf of Owner.

41. **_Signatures Required to Bind Parties._** Resident acknowledges that: (i) Resident and Owner's leasing representative have reviewed this Lease (including all addenda to this Lease); (ii) Owner's leasing representative, as "Owner's Agent" and Resident have initialed each page of this Lease and selected provisions where indicated; and (iii) Resident has agreed to the terms, covenants and conditions provided in this Lease and signed the page of this Lease on which the Resident's signature blank appears. To the extent allowed by applicable law and notwithstanding the initials provided by the respective parties and Resident's signature, Resident further acknowledges that this Lease shall only be binding upon Owner for a period of 30 days from the date on which the Lease term begins (such 30 day period shall be referred to as the "Temporary Lease Period") unless the Owner's agent for the Community has signed this Lease on behalf of Camden Development, Inc., as agent, not as principal, for the Owner where indicated in the end of this Lease. At the time the Owner's agent signs this lease, it becomes binding upon both parties for the full term of the Lease. In the event that the Owner's agent objects to any terms, covenants or conditions provided in this Lease, Resident will be so notified within the Temporary Lease Period and this Lease shall terminate effective as of the end of the Temporary Lease Period unless the Resident agrees with the revised terms, covenants and conditions. In the event of such termination, Resident shall have no further right to occupy the Unit and shall vacate the Unit by the end of the Temporary Lease Period. In the event that the Owner's agent neither signs this Lease where indicated or objects to any terms, covenants or conditions of this Lease by the end of the Temporary Lease Period, this Lease shall, nonetheless, be binding upon Owner and Resident as if the Owner's agent had signed the Lease without objection. In addition to the foregoing, to the extent allowed by applicable law, both parties agree that: (i) this Lease, applicable State Addendum and other lease documentation may be signed by each respective party's electronic signature without each party initialing each page; (ii) a Lease, State Addendum and other lease documentation signed with an electronic signature shall be as binding as an originally signed Lease, State Addendum and other lease documentation; and (iii) an electronically signed Lease, State Addendum and other lease documentation may not be denied legal effect or enforceability solely because it is in electronic form or signed with an electronic signature.  Resident may request an electronic or paper copy from the Owner's representative at any time during the term of this Lease. Resident acknowledges that, unless prohibited by applicable law or otherwise indicated by Owner, any lease addenda previously signed by Resident shall be binding on Resident as if Resident signed such addenda with this Lease. Resident acknowledges and agrees that lease addenda previously signed do not have to be resigned to be effective during the term of this Lease.  As used in this section, the term "lease documentation" shall include, without limitation, any amendments, renewals or other modifications of this Lease entered into from time to time by the parties.

42. **_(See attached State Addendum for additional provisions.)_**

Owner's Agent Initials_____

Resident's Initials_____

Page 19 of 20




© Camden, 2005    Revised January 2021

The terms of this Lease are agreed to and accepted by:

**OWNER:**

Camden Deerfield

By:  Camden Development, Inc., as agent, not as principal, for the Owner

Signature:_____

Name Printed: _____

Title: Camden Associate

Date: 07/25/2023

**RESIDENT(S):**

Signature:_____

Name Printed:_____

Date:_____

Signature:_____

Name Printed:_____

Date:_____

Signature:_____

Name Printed:_____

Date:_____

Signature:_____

Name Printed:_____

Date:_____

Owner's Agent Initials_____

Resident's Initials_____

Page 20 of 20

© Camden, 2005   Revised January 2021

HEAD OF HOUSEHOLD
*Jason Dagley*
SIGNED 7/31/2023 AT 9 54PM EDT

DOCUMENT SIGNER
*Kiniya Crayton*
SIGNED 8/1/2023 AT 2:52PM EDT

7/8/24, 12:16 PM

**Dagley, Jason Lee (Unit 7201)**
**Resident ledger - as of Property date: 07/08/2024**

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | * | Charges | Credits | Balance |
|------|------|--------|-------|------|-------------|------|---|---------|---------|---------|
| 7201 | 07/04/2024 | | | LATEFEE | July late fees | | | $259.40 | | $12455.66 |
| 7201 | 07/01/2024 | 072024 | | RENT | Rent | | | $2429.00 | | $12196.26 |
| 7201 | 07/01/2024 | 072024 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $15.00 | | $9767.26 |
| 7201 | 07/01/2024 | 072024 | | VALETWASTE | Valet Waste | | | $36.00 | | $9752.26 |
| 7201 | 07/01/2024 | 072024 | | TECHPACKAGE | Technology Package | | | $114.00 | | $9716.26 |
| 7201 | 06/23/2024 | 062024 | | RUBSWATER | Sewer for 4/2/2024 - 5/7/2024 | 0 | | $43.17 | | $9602.26 |
| 7201 | 06/23/2024 | 062024 | | RUBSWATER | Water for 4/2/2024 - 5/7/2024 | 0 | | $23.19 | | $9559.09 |
| 7201 | 06/23/2024 | 062024 | | SERVICECHARGE | BillingFee for 4/2/2024 - 5/7/2024 | 0 | | $6.50 | | $9535.90 |
| 7201 | 06/23/2024 | 062024 | | RUBSTRASH | Trash for 4/2/2024 - 5/7/2024 | 0 | | $5.00 | | $9529.40 |
| 7201 | 06/23/2024 | 062024 | | RUBSRECYCLE | Recycling for 4/2/2024 - 5/7/2024 | 0 | | $4.97 | | $9524.40 |
| 7201 | 06/23/2024 | 062024 | | PESTCONTROL | PestControl for 4/2/2024 - 5/7/2024 | 0 | | $2.97 | | $9519.43 |
| 7201 | 06/16/2024 | 062024 | | VACRECOVERFEES | VCR - 5/9/2024 - 6/11/2024 billed 33 of 0 0 days | | | $25.00 | | $9516.46 |
| 7201 | 06/16/2024 | 062024 | | ELECTRICREIMB | VCR - 5/9/2024 - 6/11/2024 billed 33 of 33 days | 0 | | $125.80 | | $9491.46 |
| 7201 | 06/04/2024 | | | LATEFEE | June late fees | | | $259.40 | | $9365.66 |
| 7201 | 06/01/2024 | 062024 | | RENT | Rent | | | $2429.00 | | $9106.26 |
| 7201 | 06/01/2024 | 062024 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $15.00 | | $6677.26 |
| 7201 | 06/01/2024 | 062024 | | VALETWASTE | Valet Waste | | | $36.00 | | $6662.26 |
| 7201 | 06/01/2024 | 062024 | | TECHPACKAGE | Technology Package | | | $114.00 | | $6626.26 |
| 7201 | 05/23/2024 | 052024 | | RUBSWATER | Sewer for 3/5/2024 - 4/2/2024 | 0 | | $31.19 | | $6512.26 |
| 7201 | 05/23/2024 | 052024 | | RUBSWATER | Water for 3/5/2024 - 4/2/2024 | 0 | | $16.87 | | $6481.07 |
| 7201 | 05/23/2024 | 052024 | | SERVICECHARGE | BillingFee for 3/5/2024 - 4/2/2024 | 0 | | $6.50 | | $6464.20 |
| 7201 | 05/23/2024 | 052024 | | RUBSTRASH | Trash for 3/5/2024 - 4/2/2024 | 0 | | $5.00 | | $6457.70 |
| 7201 | 05/23/2024 | 052024 | | RUBSRECYCLE | Recycling for 3/5/2024 - 4/2/2024 | 0 | | $4.97 | | $6452.70 |
| 7201 | 05/23/2024 | 052024 | | PESTCONTROL | PestControl for 3/5/2024 - 4/2/2024 | 0 | | $2.97 | | $6447.73 |
| 7201 | 05/16/2024 | 052024 | | VACRECOVERFEES | VCR - 4/10/2024 - 5/9/2024 billed 29 of 0 0 days | | | $25.00 | | $6444.76 |
| 7201 | 05/16/2024 | 052024 | | ELECTRICREIMB | VCR - 4/10/2024 - 5/9/2024 billed 29 of 29 days | 0 | | $110.07 | | $6419.76 |
| 7201 | 05/04/2024 | | | LATEFEE | May late fees | | | $259.40 | | $6309.69 |
| 7201 | 05/01/2024 | 052024 | | RENT | Rent | | | $2429.00 | | $6050.29 |
| 7201 | 05/01/2024 | 052024 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $15.00 | | $3621.29 |
| 7201 | 05/01/2024 | 052024 | | VALETWASTE | Valet Waste | | | $36.00 | | $3606.29 |
| 7201 | 05/01/2024 | 052024 | | TECHPACKAGE | Technology Package | | | $114.00 | | $3570.29 |
| 7201 | 04/23/2024 | 042024 | | RUBSWATER | Sewer for 2/3/2024 - 3/5/2024 | 0 | | $39.76 | | $3456.29 |
| 7201 | 04/23/2024 | 042024 | | RUBSWATER | Water for 2/3/2024 - 3/5/2024 | 0 | | $21.39 | | $3416.53 |
| 7201 | 04/23/2024 | 042024 | | SERVICECHARGE | BillingFee for 2/3/2024 - 3/5/2024 | 0 | | $6.50 | | $3395.14 |
| | | | | | | | Balance | | | $12,455.66 |

7/8/24, 12:16 PM                                                                                                                                OneSite

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | Charges | Credits | Balance |
|------|------|--------|-------|------|-------------|------|---------|---------|---------|
| 7201 | 04/23/2024 | 042024 | | RUBSTRASH | Trash for 2/3/2024 - 3/5/2024 | 0 | $5.00 | | $3388.64 |
| 7201 | 04/23/2024 | 042024 | | RUBSRECYCLE | Recycling for 2/3/2024 - 3/5/2024 | 0 | $4.97 | | $3383.64 |
| 7201 | 04/23/2024 | 042024 | | PESTCONTROL | PestControl for 2/3/2024 - 3/5/2024 | 0 | $2.97 | | $3378.67 |
| 7201 | 04/22/2024 | 042024 | | ATTORNEYFEES | Attorney/Eviction Fees - Dagley | | $170.00 | | $3375.70 |
| 7201 | 04/18/2024 | 042024 | | VACRECOVERFEES | VCR - 3/11/2024 - 4/10/2024 billed 30 of 0 days | 0 | $25.00 | | $3205.70 |
| 7201 | 04/18/2024 | 042024 | | ELECTRICREIMB | VCR - 3/11/2024 - 4/10/2024 billed 30 of 30 days | 0 | $95.04 | | $3180.70 |
| 7201 | 04/17/2024 | 042024 | | NSFFEE | NSF Fee: Dagley, Jason LeeDWMQWWWQA07 | | $150.77 | | $3085.66 |
| 7201 | 04/17/2024 | 042024 | 998 | PMTOPACH | Insufficient Funds (R01) | DWMQWWWQA07 | | $-3015 48 | $2934.89 |
| 7201 | 04/11/2024 | 042024 | 430 | PMTOPACH | WelcomeHome ACH payment – Jason Dagley 4/12/2024 | DWMQWWWQA07 | | $3015.48 | $-80.59 |
| 7201 | 04/04/2024 | | | LATEFEE | April late fees | | $259.40 | | $2934.89 |
| 7201 | 04/01/2024 | 042024 | | RENT | Rent | | $2429.00 | | $2675.49 |
| 7201 | 04/01/2024 | 042024 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $246.49 |
| 7201 | 04/01/2024 | 042024 | | VALETWASTE | Valet Waste | | $36.00 | | $231.49 |
| 7201 | 04/01/2024 | 042024 | | TECHPACKAGE | Technology Package | | $114.00 | | $195.49 |
| 7201 | 03/23/2024 | 032024 | | RUBSWATER | Sewer for 1/2/2024 - 2/3/2024 | 0 | $40.35 | | $81.49 |
| 7201 | 03/23/2024 | 032024 | | RUBSWATER | Water for 1/2/2024 - 2/3/2024 | 0 | $21.70 | | $41.14 |
| 7201 | 03/23/2024 | 032024 | | SERVICECHARGE | BillingFee for 1/2/2024 - 2/3/2024 | 0 | $6.50 | | $19.44 |
| 7201 | 03/23/2024 | 032024 | | RUBSTRASH | Trash for 1/2/2024 - 2/3/2024 | 0 | $5.00 | | $12.94 |
| 7201 | 03/23/2024 | 032024 | | RUBSRECYCLE | Recycling for 1/2/2024 - 2/3/2024 | 0 | $4.97 | | $7.94 |
| 7201 | 03/23/2024 | 032024 | | PESTCONTROL | PestControl for 1/2/2024 - 2/3/2024 | 0 | $2.97 | | $2.97 |
| 7201 | 03/22/2024 | 032024 | 440 | PMTOPIRD | Check Scan - Jason Dagley | 6680104470 | | $15146.20 | $0.00 |
| 7201 | 03/22/2024 | 032024 | | CONCFEES | Fee Concession - Attorney Fee | | | $330.00 | $15146.20 |
| 7201 | 03/22/2024 | 032024 | | CONCLATE | Concession on Late fees and Late Adjustments - Dagley | | | $1037 60 | $15476.20 |
| 7201 | 03/13/2024 | 032024 | | VACRECOVERFEES | VCR - 2/9/2024 - 3/11/2024 billed 31 of 0 days | 0 | $25.00 | | $16513.80 |
| 7201 | 03/13/2024 | 032024 | | ELECTRICREIMB | VCR - 2/9/2024 - 3/11/2024 billed 31 of 31 days | 0 | $95.44 | | $16488.80 |
| 7201 | 03/04/2024 | | | LATEFEE | March late fees | | $259.40 | | $16393.36 |
| 7201 | 03/01/2024 | 032024 | | RENT | Rent | | $2429.00 | | $16133.96 |
| 7201 | 03/01/2024 | 032024 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $13704.96 |
| 7201 | 03/01/2024 | 032024 | | VALETWASTE | Valet Waste | | $36.00 | | $13689.96 |
| 7201 | 03/01/2024 | 032024 | | TECHPACKAGE | Technology Package | | $114.00 | | $13653.96 |
| 7201 | 02/25/2024 | 022024 | | INSURVIOLATION | Renters Insurance Violation Charge | | $25.00 | | $13539.96 |
| 7201 | 02/23/2024 | 022024 | | RUBSWATER | Sewer for 12/4/2023 - 1/2/2024 | 0 | $33.91 | | $13514.96 |
| 7201 | 02/23/2024 | 022024 | | RUBSWATER | Water for 12/4/2023 - 1/2/2024 | 0 | $18.31 | | $13481.05 |
| 7201 | 02/23/2024 | 022024 | | SERVICECHARGE | BillingFee for 12/4/2023 - 1/2/2024 | 0 | $6.50 | | $13462.74 |
| | | | | | | Balance | | | $12,455.66 |

7/8/24, 12:16 PM                                                                  OneSite

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | Charges | Credits | Balance |
|------|------|--------|-------|------|-------------|------|---------|---------|---------|
| 7201 | 02/23/2024 | 022024 | | RUBSTRASH | Trash for 12/4/2023 - 1/2/2024 | 0 | $5.00 | | $13456.24 |
| 7201 | 02/23/2024 | 022024 | | RUBSRECYCLE | Recycling for 12/4/2023 - 1/2/2024 | 0 | $4.97 | | $13451.24 |
| 7201 | 02/23/2024 | 022024 | | PESTCONTROL | PestControl for 12/4/2023 - 1/2/2024 | 0 | $2.97 | | $13446.27 |
| 7201 | 02/16/2024 | 022024 | | VACRECOVERFEES | VCR - 1/10/2024 - 2/9/2024 billed 30 of 0 days | 0 | $25.00 | | $13443.30 |
| 7201 | 02/16/2024 | 022024 | | ELECTRICREIMB | VCR - 1/10/2024 - 2/9/2024 billed 30 of 30 days | 0 | $100.83 | | $13418.30 |
| 7201 | 02/04/2024 | | | LATEFEE | February late fees | | $259.40 | | $13317.47 |
| 7201 | 02/01/2024 | 022024 | | RENT | Rent | | $2429.00 | | $13058.07 |
| 7201 | 02/01/2024 | 022024 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | . | $10629.07 |
| 7201 | 02/01/2024 | 022024 | | VALETWASTE | Valet Waste | | $36.00 | | $10614.07 |
| 7201 | 02/01/2024 | 022024 | | TECHPACKAGE | Technology Package | | $114.00 | | $10578.07 |
| 7201 | 01/23/2024 | 012024 | | RUBSWATER | Sewer for 11/3/2023 - 12/4/2023 | 0 | $39.38 | | $10464.07 |
| 7201 | 01/23/2024 | 012024 | | RUBSWATER | Water for 11/3/2023 - 12/4/2023 | 0 | $21.20 | | $10424.69 |
| 7201 | 01/23/2024 | 012024 | | SERVICECHARGE | BillingFee for 11/3/2023 - 12/4/2023 | 0 | $6.50 | | $10403.49 |
| 7201 | 01/23/2024 | 012024 | | RUBSTRASH | Trash for 11/3/2023 - 12/4/2023 | 0 | $5.00 | | $10396.99 |
| 7201 | 01/23/2024 | 012024 | | RUBSRECYCLE | Recycling for 11/3/2023 - 12/4/2023 | 0 | $4.97 | | $10391.99 |
| 7201 | 01/23/2024 | 012024 | | PESTCONTROL | PestControl for 11/3/2023 - 12/4/2023 | 0 | $2.97 | | $10387.02 |
| 7201 | 01/14/2024 | 012024 | | VACRECOVERFEES | VCR - 12/8/2023 - 1/10/2024 billed 33 of 0 days | 0 | $25.00 | | $10384.05 |
| 7201 | 01/14/2024 | 012024 | | ELECTRICREIMB | VCR - 12/8/2023 - 1/10/2024 billed 33 of 33 days | 0 | $109.04 | | $10359.05 |
| 7201 | 01/04/2024 | | | LATEFEE | January late fees | | $259.40 | | $10250.01 |
| 7201 | 01/01/2024 | 012024 | | RENT | Rent | | $2429.00 | | $9990.61 |
| 7201 | 01/01/2024 | 012024 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $7561.61 |
| 7201 | 01/01/2024 | 012024 | | VALETWASTE | Valet Waste | | $36.00 | | $7546.61 |
| 7201 | 01/01/2024 | 012024 | | TECHPACKAGE | Technology Package | | $114.00 | | $7510.61 |
| 7201 | 12/23/2023 | 122023 | | RUBSWATER | Sewer for 10/9/2023 - 11/3/2023 | 0 | $30.31 | | $7396.61 |
| 7201 | 12/23/2023 | 122023 | | RUBSWATER | Water for 10/9/2023 - 11/3/2023 | 0 | $16.41 | | $7366.30 |
| 7201 | 12/23/2023 | 122023 | | SERVICECHARGE | BillingFee for 10/9/2023 - 11/3/2023 | 0 | $6.50 | | $7349.89 |
| 7201 | 12/23/2023 | 122023 | | RUBSTRASH | Trash for 10/9/2023 - 11/3/2023 | 0 | $5.00 | | $7343.39 |
| 7201 | 12/23/2023 | 122023 | | RUBSRECYCLE | Recycling for 10/9/2023 - 11/3/2023 | 0 | $4.97 | | $7338.39 |
| 7201 | 12/23/2023 | 122023 | | PESTCONTROL | PestControl for 10/9/2023 - 11/3/2023 | 0 | $2.97 | | $7333.42 |
| 7201 | 12/13/2023 | 122023 | | VACRECOVERFEES | VCR - 11/9/2023 - 12/8/2023 billed 29 of 0 days | 0 | $25.00 | | $7330.45 |
| 7201 | 12/13/2023 | 122023 | | ELECTRICREIMB | VCR - 11/9/2023 - 12/8/2023 billed 29 of 29 days | 0 | $111.31 | | $7305.45 |
| 7201 | 12/04/2023 | | | LATEFEE | December late fees | | $259.40 | | $7194.14 |
| 7201 | 12/01/2023 | 122023 | | RENT | Rent | | $2429.00 | | $6934.74 |
| | | | | | | Balance | | | $12,455.66 |

7/8/24, 12:16 PM                                                                    OneSite

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | Charges | Credits | Balance |
|------|------|--------|-------|------|-------------|------|---------|---------|---------|
| 7201 | 12/01/2023 | 122023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $4505.74 |
| 7201 | 12/01/2023 | 122023 | | VALETWASTE | Valet Waste | | $36.00 | | $4490.74 |
| 7201 | 12/01/2023 | 122023 | | TECHPACKAGE | Technology Package | | $114.00 | | $4454.74 |
| 7201 | 11/23/2023 | 112023 | | RUBSWATER | Sewer for 9/6/2023 - 10/9/2023 | 0 | $37.94 | | $4340.74 |
| 7201 | 11/23/2023 | 112023 | | RUBSWATER | Water for 9/6/2023 - 10/9/2023 | 0 | $20.44 | | $4302.80 |
| 7201 | 11/23/2023 | 112023 | | SERVICECHARGE | BillingFee for 9/6/2023 - 10/9/2023 | 0 | $6.50 | | $4282.36 |
| 7201 | 11/23/2023 | 112023 | | RUBSTRASH | Trash for 9/6/2023 - 10/9/2023 | 0 | $5.00 | | $4275.86 |
| 7201 | 11/23/2023 | 112023 | | RUBSRECYCLE | Recycling for 9/6/2023 - 10/9/2023 | 0 | $4.97 | | $4270.86 |
| 7201 | 11/23/2023 | 112023 | | PESTCONTROL | PestControl for 9/6/2023 - 10/9/2023 | 0 | $2.97 | | $4265.89 |
| 7201 | 11/16/2023 | 112023 | | VACRECOVERFEES | VCR - 10/9/2023 - 11/9/2023 billed 31 of 0 days | 0 | $25.00 | | $4262.92 |
| 7201 | 11/16/2023 | 112023 | | ELECTRICREIMB | VCR - 10/9/2023 - 11/9/2023 billed 31 of 31 days | 0 | $121.14 | | $4237.92 |
| 7201 | 11/14/2023 | 112023 | | ATTORNEYFEES | Attorney/Eviction Fees - Dagley | | $500.00 | | $4116.78 |
| 7201 | 11/04/2023 | | | LATEFEE | November late fees | | $259.40 | | $3616.78 |
| 7201 | 11/01/2023 | 112023 | | RENT | Rent | | $2429.00 | | $3357.38 |
| 7201 | 11/01/2023 | 112023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $928.38 |
| 7201 | 11/01/2023 | 112023 | | VALETWASTE | Valet Waste | | $36.00 | | $913.38 |
| 7201 | 11/01/2023 | 112023 | | TECHPACKAGE | Technology Package | | $114.00 | | $877.38 |
| 7201 | 10/27/2023 | 102023 | 454 | PMTOPIRD | Check Scan - Jason Dagley | 72016680105099 | | $3281.52 | $763.38 |
| 7201 | 10/23/2023 | 102023 | | RUBSWATER | Sewer for 8/3/2023 - 9/6/2023 | 0 | $37.43 | | $4044.90 |
| 7201 | 10/23/2023 | 102023 | | RUBSWATER | Water for 8/3/2023 - 9/6/2023 | 0 | $20.17 | | $4007.47 |
| 7201 | 10/23/2023 | 102023 | | SERVICECHARGE | BillingFee for 8/3/2023 - 9/6/2023 | 0 | $6.50 | | $3987.30 |
| 7201 | 10/23/2023 | 102023 | | RUBSTRASH | Trash for 8/3/2023 - 9/6/2023 | 0 | $5.00 | | $3980.80 |
| 7201 | 10/23/2023 | 102023 | | RUBSRECYCLE | Recycling for 8/3/2023 - 9/6/2023 | 0 | $4.97 | | $3975.80 |
| 7201 | 10/23/2023 | 102023 | | PESTCONTROL | PestControl for 8/3/2023 - 9/6/2023 | 0 | $2.97 | | $3970.83 |
| 7201 | 10/18/2023 | 102023 | | VACRECOVERFEES | VCR - 9/6/2023 - 10/9/2023 billed 33 of 0 days | 0 | $25.00 | | $3967.86 |
| 7201 | 10/18/2023 | 102023 | | ELECTRICREIMB | VCR - 9/6/2023 - 10/9/2023 billed 33 of 33 days | 0 | $161.34 | | $3942.86 |
| 7201 | 10/10/2023 | 102023 | | ATTORNEYFEES | Attorney/Eviction Fees - Dagley | | $500.00 | | $3781.52 |
| 7201 | 10/04/2023 | | | LATEFEE | October late fees | | $259.40 | | $3281.52 |
| 7201 | 10/01/2023 | 102023 | | RENT | Rent | | $2429.00 | | $3022.12 |
| 7201 | 10/01/2023 | 102023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $593.12 |
| 7201 | 10/01/2023 | 102023 | | VALETWASTE | Valet Waste | | $36.00 | | $578.12 |
| 7201 | 10/01/2023 | 102023 | | TECHPACKAGE | Technology Package | | $114.00 | | $542.12 |
| 7201 | 09/23/2023 | 092023 | | RUBSWATER | Sewer for 7/6/2023 - 8/3/2023 | 0 | $30.62 | | $428.12 |
| 7201 | 09/23/2023 | 092023 | | RUBSWATER | Water for 7/6/2023 - 8/3/2023 | 0 | $16.57 | | $397.50 |
| 7201 | 09/23/2023 | 092023 | | SERVICECHARGE | BillingFee for 7/6/2023 - 8/3/2023 | 0 | $6.50 | | $380.93 |
| 7201 | 09/23/2023 | 092023 | | RUBSTRASH | Trash for 7/6/2023 - 8/3/2023 | 0 | $5.00 | | $374.43 |
| | | | | | | Balance | | $12,455.66 | |

7/8/24, 12:16 PM                                                              OneSite

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | * | Charges | Credits | Balance |
|------|------|--------|-------|------|-------------|------|---|---------|---------|---------|
| 7201 | 09/23/2023 | 092023 | | RUBSRECYCLE | Recycling for 7/6/2023 - 8/3/2023 | 0 | | $4.97 | | $369.43 |
| 7201 | 09/23/2023 | 092023 | | PESTCONTROL | PestControl for 7/6/2023 - 8/3/2023 | 0 | | $2.97 | | $364.46 |
| 7201 | 09/19/2023 | 092023 | | VACRECOVERFEES | VCR - 8/5/2023 - 9/6/2023 billed 32 of 0 days | 0 | | $25.00 | | $361.49 |
| 7201 | 09/19/2023 | 092023 | | ELECTRICREIMB | VCR - 8/5/2023 - 9/6/2023 billed 32 of 32 days | 0 | | $186.49 | | $336.49 |
| 7201 | 09/11/2023 | 092023 | | AMENITYFEE | One-Time Community Fee | | | $150.00 | | $150.00 |
| 7201 | 09/11/2023 | 092023 | | RENT | Rent | | | $1619.33 | | $0.00 |
| 7201 | 09/11/2023 | 092023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $10.00 | | $-1619.33 |
| 7201 | 09/11/2023 | 092023 | | VALETWASTE | Valet Waste | | | $24.00 | | $-1629.33 |
| 7201 | 09/11/2023 | 092023 | | TECHPACKAGE | Technology Package | | | $76.00 | | $-1653.33 |
| 7201 | 09/10/2023 | 092023 | 422 | PMTOPIRD | Check Scan - Jason Dagley 9/11/2023 | 547441486 | | | $500.00 | $-1729.33 |
| 7201 | 09/10/2023 | 092023 | 422 | PMTOPIRD | Check Scan - Jason Dagley 9/11/2023 | 547441487 | | | $500.00 | $-1229.33 |
| 7201 | 09/10/2023 | 092023 | 422 | PMTOPIRD | Check Scan - Jason Dagley 9/11/2023 | 547441484 | | | $500.00 | $-729.33 |
| 7201 | 09/10/2023 | 092023 | 422 | PMTOPIRD | Check Scan - Jason Dagley 9/11/2023 | 547441485 | | | $500.00 | $-229.33 |
| 7201 | 09/10/2023 | 092023 | 422 | PMTOPIRD | Check Scan - Jason Dagley 9/11/2023 | 547441489 | | | $67.06 | $270.67 |
| 7201 | 09/10/2023 | 092023 | 422 | PMTOPIRD | Check Scan - Jason Dagley 9/11/2023 | 54744188 | | | $500.00 | $337.73 |
| 7201 | 09/10/2023 | 092023 | 422 | PMTOPIRD | Check Scan - Jason Dagley 9/11/2023 | 547551483 | | | $500.00 | $837.73 |
| 7201 | 09/04/2023 | | | LATEFEE | September late fees | | | $255.07 | | $1337.73 |
| 7201 | 09/01/2023 | 092023 | | RENT | Rent | | | $766.33 | | $1082.66 |
| 7201 | 09/01/2023 | 092023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $5.00 | | $316.33 |
| 7201 | 09/01/2023 | 092023 | | TECHPACKAGE | Technology Package | | | $38.00 | | $311.33 |
| 7201 | 09/01/2023 | 092023 | | VALETWASTE | Valet Waste | | | $12.00 | | $273.33 |
| 7201 | 08/23/2023 | 082023 | | RUBSWATER | Sewer for 6/8/2023 - 7/6/2023 | 0 | | $29.41 | | $261.33 |
| 7201 | 08/23/2023 | 082023 | | RUBSWATER | Water for 6/8/2023 - 7/6/2023 | 0 | | $15.89 | | $231.92 |
| 7201 | 08/23/2023 | 082023 | | SERVICECHARGE | BillingFee for 6/8/2023 - 7/6/2023 | 0 | | $6.50 | | $216.03 |
| 7201 | 08/23/2023 | 082023 | | RUBSTRASH | Trash for 6/8/2023 - 7/6/2023 | 0 | | $5.00 | | $209.53 |
| 7201 | 08/23/2023 | 082023 | | RUBSRECYCLE | Recycling for 6/8/2023 - 7/6/2023 | 0 | | $4.97 | | $204.53 |
| 7201 | 08/23/2023 | 082023 | | PESTCONTROL | PestControl for 6/8/2023 - 7/6/2023 | 0 | | $2.97 | | $199.56 |
| 7201 | 08/18/2023 | 082023 | | VACRECOVERFEES | VCR - 7/5/2023 - 8/5/2023 billed 31 of 0 days | 0 | | $25.00 | | $196.59 |
| 7201 | 08/18/2023 | 082023 | | ELECTRICREIMB | VCR - 7/5/2023 - 8/5/2023 billed 31 of 31 days | 0 | | $171.59 | | $171.59 |
| 7201 | 08/12/2023 | 082023 | 436 | PMTOPIRD | Check Scan - Jason Dagley | 6680105069 | | | $2680.50 | $0.00 |
| 7201 | 08/08/2023 | 082023 | | NSFFEE | NSF Fee: Dagley, Jason LeeSY9YRQ4QA08 | | | $115.91 | | $2680.50 |
| 7201 | 08/08/2023 | 082023 | 998 | PMTOPACH | Account Closed (R02) | SY9YRQ4QA08 | | | $-2318.19 | $2564.59 |
| 7201 | 08/08/2023 | | | LATEFEE | August late fees | | | $246.40 | | $246.40 |
| 7201 | 08/03/2023 | 082023 | 416 | PMTOPIRD | Check Scan - Jason Dagley | 002166 | | | $400.00 | $0.00 |
| 7201 | 08/03/2023 | 082023 | 417 | PMTOPACH | WelcomeHome ACH payment – Jason Dagley | SY9YRQ4QA08 | | | $2318.19 | $400.00 |
| | | | | | | | Balance | | | $12,455.66 |

7/8/24, 12:16 PM                                                          OneSite

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | * | Charges | Credits | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 7201 | 08/01/2023 | 082023 | | RENT | Rent | | | $2299.00 | | $2718.19 |
| 7201 | 08/01/2023 | 082023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $15.00 | | $419.19 |
| 7201 | 08/01/2023 | 082023 | | TECHPACKAGE | Technology Package | | | $114.00 | | $404.19 |
| 7201 | 08/01/2023 | 082023 | | VALETWASTE | Valet Waste | | | $36.00 | | $290.19 |
| 7201 | 07/23/2023 | 072023 | | RUBSWATER | Sewer for 5/1/2023 - 6/8/2023 | 0 | | $43.90 | | $254.19 |
| 7201 | 07/23/2023 | 072023 | | RUBSWATER | Water for 5/1/2023 - 6/8/2023 | 0 | | $23.59 | | $210.29 |
| 7201 | 07/23/2023 | 072023 | | SERVICECHARGE | BillingFee for 5/1/2023 - 6/8/2023 | 0 | | $6.50 | | $186.70 |
| 7201 | 07/23/2023 | 072023 | | RUBSTRASH | Trash for 5/1/2023 - 6/8/2023 | 0 | | $5.00 | | $180.20 |
| 7201 | 07/23/2023 | 072023 | | RUBSRECYCLE | Recycling for 5/1/2023 - 6/8/2023 | 0 | | $4.97 | | $175.20 |
| 7201 | 07/23/2023 | 072023 | | PESTCONTROL | PestControl for 5/1/2023 - 6/8/2023 | 0 | | $2.97 | | $170.23 |
| 7201 | 07/22/2023 | 072023 | | VACRECOVERFEES | VCR - 6/5/2023 - 7/5/2023 billed 30 of 0 days | 0 | | $25.00 | | $167.26 |
| 7201 | 07/22/2023 | 072023 | | ELECTRICREIMB | VCR - 6/5/2023 - 7/5/2023 billed 30 of 30 days | 0 | | $142.26 | | $142.26 |
| 7201 | 07/10/2023 | 072023 | 418 | PMTOPIRD | Check Scan - Jason Dagley | 6680105015 | | | $2852.47 | $0.00 |
| 7201 | 07/04/2023 | | | LATEFEE | July late fees | | | $246.40 | | $2852.47 |
| 7201 | 07/01/2023 | 072023 | | RENT | Rent | | | $2299.00 | | $2606.07 |
| 7201 | 07/01/2023 | 072023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $15.00 | | $307.07 |
| 7201 | 07/01/2023 | 072023 | | VALETWASTE | Valet Waste | | | $36.00 | | $292.07 |
| 7201 | 07/01/2023 | 072023 | | TECHPACKAGE | Technology Package | | | $114.00 | | $256.07 |
| 7201 | 06/23/2023 | 062023 | | RUBSWATER | Sewer for 4/6/2023 - 5/1/2023 | 0 | | $31.97 | | $142.07 |
| 7201 | 06/23/2023 | 062023 | | RUBSWATER | Water for 4/6/2023 - 5/1/2023 | 0 | | $17.29 | | $110.10 |
| 7201 | 06/23/2023 | 062023 | | SERVICECHARGE | BillingFee for 4/6/2023 - 5/1/2023 | 0 | | $6.50 | | $92.81 |
| 7201 | 06/23/2023 | 062023 | | RUBSTRASH | Trash for 4/6/2023 - 5/1/2023 | 0 | | $5.00 | | $86.31 |
| 7201 | 06/23/2023 | 062023 | | RUBSRECYCLE | Recycling for 4/6/2023 - 5/1/2023 | 0 | | $4.97 | | $81.31 |
| 7201 | 06/23/2023 | 062023 | | PESTCONTROL | PestControl for 4/6/2023 - 5/1/2023 | 0 | | $2.97 | | $76.34 |
| 7201 | 06/17/2023 | 062023 | | VACRECOVERFEES | VCR - 5/8/2023 - 6/5/2023 billed 28 of 0 days | 0 | | $25.00 | | $73.37 |
| 7201 | 06/17/2023 | 062023 | | ELECTRICREIMB | VCR - 5/8/2023 - 6/5/2023 billed 28 of 28 days | 0 | | $121.45 | | $48.37 |
| 7201 | 06/12/2023 | 062023 | 430 | PMTOPACH | Check Scan - Jason Dagley | 3403 | | | $2000.00 | $-73.08 |
| 7201 | 06/04/2023 | | | LATEFEE | June late fees | | | $246.40 | | $1926.92 |
| 7201 | 06/01/2023 | 062023 | | RENT | Rent | | | $2299.00 | | $1680.52 |
| 7201 | 06/01/2023 | 062023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $15.00 | | $-618.48 |
| 7201 | 06/01/2023 | 062023 | | TECHPACKAGE | Technology Package | | | $114.00 | | $-633.48 |
| 7201 | 06/01/2023 | 062023 | | VALETWASTE | Valet Waste | | | $36.00 | | $-747.48 |
| 7201 | 05/23/2023 | 052023 | | RUBSWATER | Sewer for 3/2/2023 - 4/6/2023 | 0 | | $41.70 | | $-783.01 |
| 7201 | 05/23/2023 | 052023 | | RUBSWATER | Water for 3/2/2023 - 4/6/2023 | 0 | | $22.43 | | $-825.18 |
| 7201 | 05/23/2023 | 052023 | | SERVICECHARGE | BillingFee for 3/2/2023 - 4/6/2023 | 0 | | $6.50 | | $-847.61 |
| 7201 | 05/23/2023 | 052023 | | RUBSTRASH | Trash for 3/2/2023 - 4/6/2023 | 0 | | $5.00 | | $-854.11 |
| 7201 | 05/23/2023 | 052023 | | RUBSRECYCLE | Recycling for 3/2/2023 - 4/6/2023 | 0 | | $4.97 | | $-859.11 |
| | | | | | | | Balance | | | $12,455.66 |

7/8/24, 12:16 PM                                                                          OneSite

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | Charges | Credits | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 7201 | 05/23/2023 | 052023 | | PESTCONTROL | PestControl for 3/2/2023 - 4/6/2023 | 0 | $2.97 | | $-864.08 |
| 7201 | 05/18/2023 | 052023 | | VACRECOVERFEES | VCR - 4/7/2023 - 5/8/2023 billed 31 of 0 days | 0 | $25.00 | | $-867.05 |
| 7201 | 05/18/2023 | 052023 | | ELECTRICREIMB | VCR - 4/7/2023 - 5/8/2023 billed 31 of 31 days | 0 | $115.86 | | $-892.05 |
| 7201 | 05/10/2023 | 052023 | 1 | PMTETF | Payment by Electronic Transfer of funds - ERAP ESUSU | 30006102756 | | $2800.00 | $-1007.91 |
| 7201 | 05/04/2023 | | | LATEFEE | May late fees | | $246.40 | | $1792.09 |
| 7201 | 05/01/2023 | 052023 | | RENT | Rent | | $2299.00 | | $1545.69 |
| 7201 | 05/01/2023 | 052023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $-753.31 |
| 7201 | 05/01/2023 | 052023 | | VALETWASTE | Valet Waste | | $36.00 | | $-768.31 |
| 7201 | 05/01/2023 | 052023 | | TECHPACKAGE | Technology Package | | $114.00 | | $-804.31 |
| 7201 | 04/23/2023 | 042023 | | RUBSWATER | Sewer for 2/8/2023 - 3/2/2023 | 0 | $25.91 | | $-918.31 |
| 7201 | 04/23/2023 | 042023 | | RUBSWATER | Water for 2/8/2023 - 3/2/2023 | 0 | $14.00 | | $-944.22 |
| 7201 | 04/23/2023 | 042023 | | SERVICECHARGE | BillingFee for 2/8/2023 - 3/2/2023 | 0 | $6.50 | | $-958.22 |
| 7201 | 04/23/2023 | 042023 | | RUBSTRASH | Trash for 2/8/2023 - 3/2/2023 | 0 | $3.93 | | $-964.72 |
| 7201 | 04/23/2023 | 042023 | | RUBSRECYCLE | Recycling for 2/8/2023 - 3/2/2023 | 0 | $3.90 | | $-968.65 |
| 7201 | 04/23/2023 | 042023 | | PESTCONTROL | PestControl for 2/8/2023 - 3/2/2023 | 0 | $2.33 | | $-972.55 |
| 7201 | 04/18/2023 | 042023 | 432 | PMTOPIRD | Check Scan - Jason Dagley | 136351 | | $1100.00 | $-974.88 |
| 7201 | 04/18/2023 | 042023 | 432 | PMTOPIRD | Check Scan - Jason Dagley | 462850820 | | $101.26 | $125.12 |
| 7201 | 04/18/2023 | 042023 | 432 | PMTOPIRD | Check Scan - Jason Dagley | 528946158 | | $1000.00 | $226.38 |
| 7201 | 04/18/2023 | 042023 | 432 | PMTOPIRD | Check Scan - Jason Dagley | 528946157 | | $1000.00 | $1226.38 |
| 7201 | 04/18/2023 | 042023 | 432 | PMTOPIRD | Check Scan - Jason Dagley | 528946156 | | $1000.00 | $2226.38 |
| 7201 | 04/16/2023 | 042023 | | VACRECOVERFEES | VCR - 3/10/2023 - 4/7/2023 billed 28 of 0 days | | $25.00 | | $3226.38 |
| 7201 | 04/16/2023 | 042023 | | ELECTRICREIMB | VCR - 3/10/2023 - 4/7/2023 billed 28 of 28 days | 0 | $100.12 | | $3201.38 |
| 7201 | 04/13/2023 | 042023 | | NSFFEE | NSF Fee: Dagley, Jason LeeJ6GLP4SPLA2 | | $142.72 | | $3101.26 |
| 7201 | 04/13/2023 | 042023 | 998 | PMTOPACH | Insufficient Funds (R01) | J6GLP4SPLA2 | | $-2854.39 | $2958.54 |
| 7201 | 04/07/2023 | 042023 | | NSFFEE | NSF Fee: Dagley, Jason LeeH708N4SPLA2 | | $129.15 | | $104.15 |
| 7201 | 04/07/2023 | 042023 | 420 | PMTOPACH | WelcomeHome ACH payment – Jason Dagley 4/8/2023 | J6GLP4SPLA2 | | $2854.39 | $-25.00 |
| 7201 | 04/07/2023 | 042023 | 998 | PMTOPACH | Insufficient Funds (R01) | H708N4SPLA2 | | $-2582.99 | $2829.39 |
| 7201 | 04/07/2023 | | | LATEFEE | April late fees | | $246.40 | | $246.40 |
| 7201 | 04/03/2023 | 042023 | 409 | PMTOPACH | WelcomeHome ACH payment – Jason Dagley | H708N4SPLA2 | | $2582.99 | $0.00 |
| 7201 | 04/01/2023 | 042023 | | RENT | Rent | | $2299.00 | | $2582.99 |
| 7201 | 04/01/2023 | 042023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | $15.00 | | $283.99 |
| 7201 | 04/01/2023 | 042023 | | VALETWASTE | Valet Waste | | $36.00 | | $268.99 |
| 7201 | 04/01/2023 | 042023 | | TECHPACKAGE | Technology Package | | $114.00 | | $232.99 |
| | | | | | | | Balance | | $12,455.66 |

7/8/24, 12:16 PM                                                OneSite

| Unit | Date | Period | Ctrl# | Code | Description | Doc# | * | Charges | Credits | Balance |
|------|------|--------|-------|------|-------------|------|---|---------|---------|---------|
| 7201 | 03/15/2023 | 032023 | | VACRECOVERFEES | VCR - 2/9/2023 - 3/10/2023 billed 29 of 0 days | 0 | | $25.00 | | $118.99 |
| 7201 | 03/15/2023 | 032023 | | ELECTRICREIMB | VCR - 2/9/2023 - 3/10/2023 billed 29 of 29 days | 0 | | $93.99 | | $93.99 |
| 7201 | 03/11/2023 | 032023 | 426 | PMTOPIRD | Check Scan - Jason Dagley | 501863446 | | | $500.00 | $0.00 |
| 7201 | 03/11/2023 | 032023 | 426 | PMTOPIRD | Check Scan - Jason Dagley | 501863448 | | | $210.40 | $500.00 |
| 7201 | 03/11/2023 | 032023 | 426 | PMTOPIRD | Check Scan - Jason Dagley | 501863444 | | | $500.00 | $710.40 |
| 7201 | 03/11/2023 | 032023 | 426 | PMTOPIRD | Check Scan - Jason Dagley | 501863443 | | | $500.00 | $1210.40 |
| 7201 | 03/11/2023 | 032023 | 426 | PMTOPIRD | Check Scan - Jason Dagley | 501863447 | | | $500.00 | $1710.40 |
| 7201 | 03/11/2023 | 032023 | 426 | PMTOPIRD | Check Scan - Jason Dagley | 501863445 | | | $500.00 | $2210.40 |
| 7201 | 03/04/2023 | | | LATEFEE | March late fees | | | $246.40 | | $2710.40 |
| 7201 | 03/01/2023 | 032023 | | RENT | Rent | | | $2299.00 | | $2464.00 |
| 7201 | 03/01/2023 | 032023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $15.00 | | $165.00 |
| 7201 | 03/01/2023 | 032023 | | TECHPACKAGE | Technology Package | | | $114.00 | | $150.00 |
| 7201 | 03/01/2023 | 032023 | | VALETWASTE | Valet Waste | | | $36.00 | | $36.00 |
| 7201 | 02/08/2023 | 022023 | | RENT | Rent | | | $1724.25 | | $0.00 |
| 7201 | 02/08/2023 | 022023 | | AMENITYFEE | Community Fee | | | $150.00 | | $-1724.25 |
| 7201 | 02/08/2023 | 022023 | | PARKINGRECURCHARGE | Parking Monthly Rent Charge | | | $11.25 | | $-1874.25 |
| 7201 | 02/08/2023 | 022023 | | TECHPACKAGE | Technology Package | | | $85.50 | | $-1885.50 |
| 7201 | 02/08/2023 | 022023 | | VALETWASTE | Valet Waste | | | $27.00 | | $-1971.00 |
| 7201 | 02/08/2023 | 022023 | 421 | PMTOPIRD | Check Scan - Jason Dagley | 324632490 | | | $500.00 | $-1998.00 |
| 7201 | 02/08/2023 | 022023 | 421 | PMTOPIRD | Check Scan - Jason Dagley | 324632489 | | | $500.00 | $-1498.00 |
| 7201 | 02/08/2023 | 022023 | 421 | PMTOPIRD | Check Scan - Jason Dagley | 324632488 | | | $500.00 | $-998.00 |
| 7201 | 02/08/2023 | 022023 | 421 | PMTOPIRD | Check Scan - Jason Dagley | 324632492 | | | $128.00 | $-498.00 |
| 7201 | 02/08/2023 | 022023 | 421 | PMTOPIRD | Check Scan - Jason Dagley | 324632491 | | | $500.00 | $-370.00 |
| 7201 | 02/07/2023 | 022023 | | APPFEE | Application Fee - David Dagley | | | $130.00 | | $130.00 |
| 7201 | 02/06/2023 | 022023 | 415 | PMTOPACH | Jason Dagley Online Payment Fee | HNWZG0LPLA3 | | | $430.00 | $0.00 |
| 7201 | 02/06/2023 | 022023 | | ADMIN | Administrative Fee- Online Application | | | $300.00 | | $430.00 |
| 7201 | 02/06/2023 | 022023 | | APPFEE | Application Fee-Online Application | | | $130.00 | | $130.00 |
| | | | | | | | Balance | | | $12,455.66 |